**LUTHER P. MILLER, INC., Petitioner**

**v.**

**UNDERGROUND STORAGE TANK INDEMNIFICATION BOARD, Respondent**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 19, 2008.

Decided Feb. 11, 2009.

Robert I. Boose, II, Somerset, for petitioner.

Amy L. Weber, Special Funds Counsel, Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, and SIMPSON, Judge, and, KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

Luther P. Miller, Inc. (LPM) petitions for review of an order of the Underground Storage Tank Indemnification Board (Board) which adopted the recommendation of the presiding officer that the decision of the Underground Storage Tank Indemnification Fund (Fund) to deny eligibility for reimbursement from the Fund to LPM be affirmed. We affirm.

The issues in this appeal are: (1) whether LPM is an "owner, operator or certified tank installer" as set forth in Section 706 of the Storage Tank and Spill Prevention Act[1] (Act) or otherwise eligible to make a claim for benefits; and (2) whether underground storage tanks must continue to be registered under the provisions of Section 503 of the Act[2] in order to make a claim with the Fund.

The stipulated facts in this matter are as follows. LPM is a Pennsylvania corpora-

---

1. Act of July 6, 1989, P.L. 169, *as amended*, 35 P.S. § 6021.706. Section 706 governs eligibility of claimants in order to receive a payment from the Fund. As noted by this Court in *J.D. Pickens (Estate of Jeannette Sherman) v. Underground Storage Tank Indemnification Board*, 890 A.2d 1117 n. 1 (Pa.Cmwlth.2006):

The purpose of the Tank Act is to prevent the occurrence of storage tank releases "through the establishment of a regulatory scheme for the storage of regulated substances in new and existing storage tanks and to provide liability for damages sustained within this Commonwealth as a result of a release and to require prompt cleanup and removal of such pollution and released regulated substance." [Section 102(b) of the Act,] 35 P.S. § 6021.102(b). The Fund was created to provide necessary monies to the Board "for the purpose of making payments to owners, operators and certified tank installers of underground storage tanks who incur liability for taking corrective action or for bodily injury or property damage caused by a sudden or nonsudden release from underground storage tanks and for making loans to owners as authorized by [the] [Tank Act]." [Section 704(a)(1) of the Act,] 35 P.S. § 6021.704(a)(1).

2. 35 P.S. § 6021.503. Section 503 governs registration of underground storage tanks.

tion with principal offices located in Somerset, Pennsylvania. The property upon which the underground storage tanks were installed was owned by James Little and is located at 2208 Bedford Street, Johnstown, Pennsylvania.

LPM entered into a lease agreement with James Little dated April 26, 1991, as well as an agreement of the same date concerning the underground storage tanks. The lease was for a term of 138 months. In the agreement, Little agreed to remove existing underground storage tanks and remediate the environment as necessary and LPM agreed to install new underground tanks and related equipment. The parties agreed that Little would remain the owner of the tanks during the term of the lease.

Prior to LPM's installation of the new tanks, Little removed the existing tanks, remediated the site and obtained approval for the tank closure from the Pennsylvania Department of Environmental Protection (DEP). LPM installed two underground storage tanks on the site in January 1992, both of which were used to store unleaded gasoline.[3] LPM was registered with DEP as the owner and operator of the two tanks. LPM remained the registered owner of the tanks until October 4, 2002, when the registration for the tanks expired.

From June 26, 1991, through June 1999, the site was operated as a retail gasoline station. The underground storage tanks were in use for gasoline storage from January 1992 until June 1999. To the extent practicable, the product was removed from the tanks at that time and, thereafter, contained fuel residue which was unfit for resale.

LPM did not file temporary closure paperwork with DEP when the product was removed from the tanks in 1999. At the expiration of the lease on April 30, 2002, LPM provided Little with the paperwork necessary to register the tanks in Little's name. Neither LPM nor Little filed paperwork with DEP to reflect a change of storage tank ownership after the expiration of the lease.

After the registration of the tanks expired on October 4, 2002, the tanks remained unregistered between October 4, 2002, and March 6, 2006. The registration fees for the tanks were not paid from October 4, 2002, until April 18, 2006.

DEP, relying upon its registration records for ownership of underground storage tanks, sent registration renewal invoices to LPM for 2002, 2003 and 2004. On March 12, 2002, DEP sent a Notice of Violation to LPM for failure to have a requested facility inspection completed. By letter dated October 18, 2002, LPM advised DEP that the tanks had been transferred to Little on May 1, 2002. By letter dated November 10, 2003, LPM advised DEP that upon the expiration of the lease, Little, as the owner of the property, retained the tanks. LPM did not pay DEP's registration invoices because of the dispute over the ownership of the tanks.

On October 31, 2003, DEP visited the site and noted that the facility was inactive at that time. In November 2003 and January 2004, DEP informed LPM and Little that the communications about ownership of the tanks cannot be used to change or amend DEP data for the tanks. DEP also advised LPM and Little that: (1) tank registration would be changed after appropriate forms were submitted; (2) until the new forms were received, the fees would accrue until the new information was processed; and (3) unpaid registration fees would be referred to the Attorney Gener-

---

**3.** The two tanks were 10,000 gallons and 12,-   000 gallons respectively.

al's office for collection. It is DEP's position that pursuant to its regulations, tank owners are responsible for filing amended registration forms to show changes in ownership and use of the tanks and that registration fees continue to accrue until appropriate closure documents required by the regulations have been submitted.

By administrative order of November 3, 2005, DEP directed LPM to remove the underground storage tanks as the registered owner of the tanks. DEP's order contained findings which included: (1) LPM was the owner of the tanks pursuant to 25 Pa.Code § 245.1; (2) LPM failed to upgrade the existing tanks to meet 1998 performance standards; and (3) regulations required such tanks to be permanently closed within 12 months of being temporarily closed. The order further required LPM to close the tanks permanently, to take any corrective action required at the site, to file an amended registration for the tanks, and to submit a closure report. LPM did not appeal DEP's order to the Environmental Hearing Board.

The underground storage tanks were removed on January 4, 2006, with all costs being paid by LPM. During the tank removal activities, a release was discovered on January 13, 2006.[4] LPM paid all costs of remediation of the release found upon excavation of the tanks. The tanks' registration was expired and the tanks' registration fees were delinquent at the time the release was discovered. A storage tank remediation claim for the release was reported to the Fund on January 19, 2006.

The tanks were registered with DEP by LPM on approximately March 6, 2006. LPM was listed as the owner and the listed purpose of the registration was an amendment to have the tanks "Changed to Permanently Closed Tank(s)/Removal."

The invoiced tank registration fees remained unpaid until after DEP referred the matter to the Attorney General's Office for collection. After LPM received a March 15, 2006, enforcement letter from the Attorney General's office, LPM paid the delinquent registration fees on April 18, 2006.

By letter dated September 6, 2006, the Fund's administrator denied LPM's claim in part pursuant to Sections 706(3) and 503(a) of the Act because the tanks were not registered and the registration fees were not paid. The Fund's administrator also denied LPM's claim on the basis that if it is determined that Little is the owner of the tanks at issue, LPM would have no standing to pursue the claim pursuant to Section 706(1) of the Act. LPM timely appealed the denial to the Fund's executive director, who denied the claim for similar reasons by letter dated February 5, 2007.

On February 22, 2007, LPM requested a formal administrative hearing on the Fund's determination. A presiding officer was appointed to hear the appeal. The parties submitted a joint stipulation of facts and documents. Because the stipulation was in lieu of an evidentiary hearing, no evidence other than the stipulation and

---

4. The term "release" is defined by Section 103 of the Tank Act, 35 P.S. § 6021.103, as:

Any spilling, leaking, emitting, discharging, escaping, leaching or disposing from a storage tank into surface waters and groundwaters of this Commonwealth or soils or subsurface soils in an amount equal to or greater than the reportable released quantity determined under section 102 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, and regulations promulgated thereunder, or an amount equal to or greater than a discharge as defined in section 311 of the Federal Water Pollution Control Act (62 Stat. 1155, 33 U.S.C. § 1321) and regulations promulgated thereunder. . . .

accompanying exhibits, was received at the May 22, 2007, hearing.

Based on the stipulated facts and evidence, the presiding officer issued a proposed report and recommendations. Therein, the presiding officer determined that LPM's claim for reimbursement from the Fund was not eligible for coverage because the tanks were not registered as required by the Act, regardless of who owned the tanks and who performed the clean up. The presiding officer determined that the Act clearly provides that the eligibility requirements include that the claimant be the owner, operator or certified tank installer of the tank, which is the subject of the claim and that the tank has been registered in accordance with the requirements of the Act. The presiding officer concluded that LPM failed to establish that it met the requirements for eligibility to receive payment from the Fund.

Accordingly, the presiding officer recommended that the decision of the Fund to deny eligibility for reimbursement to LPM be affirmed. LPM filed exceptions to the presiding officer's recommended report and decision. By order of June 30, 2008, the Board adopted the presiding officer's report in full, including the recommendation that the Fund's decision to deny eligibility for reimbursement to LPM be affirmed. The Board noted that LPM's claim was denied because the tanks were not registered when the release was discovered not because LPM was not the owner and/or operator of the tanks in question. This appeal followed.[5]

■ The Act imposes a heavy burden of proof on a claimant seeking coverage from the Fund. *Southeast Delco School District v. Underground Storage Tank In-*demnification Board, 708 A.2d 881 (Pa. Cmwlth.1998). Herein, LPM contends that it is eligible to make a claim for benefits under Section 706 of the Act because: (1) it is considered an "owner" or "operator" by DEP; and (2) the key time period for the registration of tanks and the payment of fees to the Fund is during the time the tanks are in operation which did occur in this case.

Section 706 of the Act sets forth the statutory requirements in order for a claimant to be eligible to receive a payment from the Fund. Section 706 provides, in pertinent part, as follows:

In order to receive payment from the Underground Storage Tank Indemnification Fund, a claimant shall meet the following eligibility requirements:

(1) The claimant is the owner, operator, or certified tank installer of the tank which is the subject of the claim.

. . . .

(3) The tank has been registered in accordance with the requirements of Section 503.

35 P.S. § 6021.706 (footnote omitted).

Section 503 of the Act provides, in pertinent part, as follows:

(a) REQUIREMENTS.—Every owner of an underground storage tank, except as specifically excluded by policy or regulation of the department, shall register with the department each underground storage tank by completing and submitting the form provided by the department and by paying the registration fee prescribed by the department for each underground storage tank within three months of the effective date of this act. . . . . It shall be unlawful for any owner or operator to operate or use, in any

---

5. This Court's scope of review is limited to a determination of whether the government agency violated constitutional rights, erred as a matter of law or whether its findings of fact are supported by substantial evidence. *J.D. Pickens.*

way, any underground storage tank that has not been registered as required by this section.

35 P.S. § 6021.503.

While LPM argues that it is the "owner" or "operator" entitled to make a claim under the Act, we conclude, as did the Board, that this matter turns on the issue of whether the eligibility requirement that the tanks be registered in accordance with Section 503 of the Act was established.

As stated by the Board, the purpose of the Act was to create the Fund so that eligible owners and operators of underground storage tanks could, in exchange for the payment of certain fees, receive monies from the Fund to be used to remediate damage to the environment caused by releases from underground storage tanks and address liability claims from third parties impacted by the releases. The Board stated further that the Act and the accompanying regulations require owners and operators of underground storage tanks to meet certain basic eligibility crite-

ria in order to receive a payment from the Funds. Section 706(3) clearly requires that a tank be registered in accordance with Section 503 of the Act in order for a claimant to receive a payment from the Fund.

LPM concedes that the tanks were not in fact registered and that the applicable registration fees were not paid at the time the release was discovered and that the LPM did not register the tanks and pay the applicable registration fees until after it filed a claim for reimbursement from the Fund. Despite this concession, LPM argues that it is eligible for payment from the Fund because once the product was removed from the tanks and the tanks were taken out of service, they no longer needed to be registered under Section 503 of the Act because the tanks were no longer "underground storage tanks" as defined in the Act.

As support for this argument, LPM points out that Section 103 of the Act [6]

---

**6.** 35 P.S. § 6021.103. Section 103 defines "underground storage tank" as follows:

Any one or combination of tanks (including underground pipes connected thereto) which are used to contain an accumulation of regulated substances, and the volume of which (including the volume of the underground pipes connected thereto) is 10% or more beneath the surface of the ground. The term shall not include:
(1) Farm or residential tanks of 1,100 gallons or less capacity used for storing motor fuel for noncommercial purposes.
(2) Tanks used for storing heating oil for consumptive use on the premises where stored unless they are specifically required to be regulated by Federal law.
(3) A septic or other subsurface sewage treatment tank.
(4) A pipeline facility (including gathering lines) regulated under:
(i) The Natural Gas Pipeline Safety Act of 1968 (Public Law 90–481, 82 Stat. 720, 49 U.S.C.App. § 1671 et seq.).

(ii) The Hazardous Liquid Pipeline Safety Act of 1979 (Public Law 96–129, 93 Stat. 989, 49 U.S.C. § 2001 et seq.).
(5) An interstate or intrastate pipeline facility regulated under State laws comparable to the provisions of law in paragraph (4).
(6) Surface impoundments, pits, ponds or lagoons.
(7) Storm water or wastewater collection systems.
(8) Flow-through process tanks.
(9) Liquid traps or associated gathering lines directly related to oil or gas production and gathering operations.
(10) Storage tanks situated in an underground area (such as a basement, cellar, mine working, drift, shaft or tunnel) if the tank is situated upon or above the surface of the floor.
(11) Except for tanks subject to the requirements of 40 CFR 280 (relating to technical standards and corrective action requirements for owners and operators of underground storage tanks (UST)), tanks regulated pursuant to the act of July 7, 1980 (P.L. 380, No. 97), known as the Solid Waste

utilizes the term "used" in the definition of "underground storage tank" and the phrase "used for the storage" in the definition of "owner." LPM contends that the use of the term "used" as a verb and the phrase "used for storage" in these definitions indicates that the underground storage tanks must be actively or currently storing a regulated substance. LPM argues that otherwise they are just "tanks" and not "underground storage tanks" that are required to be registered pursuant to the language of Section 503.

LPM contends that since the tanks at issue herein were not actively being used to store product from 1999 through 2006, the tanks were not required to be registered under Section 503; therefore, it meets the requirements for eligibility set forth in Section 706(3). LPM also contends that it is eligible for reimbursement from the Fund because the tanks at issue herein contained only a *de minimis* amount of product at the time the release was discovered; therefore, under the regulations, the tank cannot be considered an underground storage tank subject to registration in accordance with Section 503 of the Act.

Finally, LPM argues that it paid the necessary registration fees and registered the tanks while they were in active use as underground storage tanks; therefore, it paid all the moneys that were required to be paid to the Fund thereby making it eligible to receive benefits from the Fund. To hold otherwise, LPM argues, would go against the remedial nature of the Act to protect the citizenry of this Commonwealth. In short, it is LPM's position that only underground storage tanks that are actively or currently being used to store products are subject to the registration requirements found in Section 706(3) of the Act.

■■■ LPM's argument is based on its own interpretation of the Act and its attempt to rewrite the Act. However, the statutory definitions of "owner" and "underground storage tank" are clear and unambiguous.[7] The words "actively" or "currently" are not included in the definitions of "owner" and "underground storage tank" before the terms "used" or "storing". This Court does not have the power to insert additional language into a statute in an attempt to rewrite it. *Halko v. Board of Directors of School District of Foster Township*, 374 Pa. 269, 97 A.2d 793 (1953).

Management Act, including, but not limited to, piping, tanks, collection and treatment systems used for leachate, methane gas and methane gas condensate management.

Section 103 defines "owner" as:

(1) In the case of a storage tank in use on the effective date of this act, or brought into use after that date, any person who owns or has an ownership interest in a storage tank used for the storage, containment, use or dispensing of regulated substances.

(2) In the case of an aboveground storage tank in use before the effective date of this act, but no longer in use on the effective date of this act, any person who owned the aboveground tank, immediately before the discontinuance of its use, as well as any person who meets the definition of owner in paragraph (1).

(3) In the case of an underground storage tank, the owner of an underground storage tank holding regulated substances on or after November 8, 1984, and the owner of an underground storage tank at the time all regulated substances were removed when removal occurred prior to November 8, 1984.

7. Pursuant to Section 1921(b) of the Statutory Construction Act of 1972, 1 Pa.C.S.1921(b), [w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. This Court may not ignore the express language of a statute. *Pennsylvania Retailers Associations v. Lazin*, 57 Pa.Cmwlth. 232, 426 A.2d 712 (1981).

When one reads the definitions of "owner" and "underground storage tank" in entirety and in context, it is clear that the definitions are not limited to tanks that are actively or currently storing product at the time a release is discovered. In short, we reject LPM's contorted interpretation of the Act.

Moreover, it is LPM's interpretation of the Act which actually goes against the remedial nature of the Act to protect the citizenry of this Commonwealth. In *M.H. Davis Estate Oil Company, Inc. v. Underground Storage Tank Indemnification Board,* 789 A.2d 398, 403 (Pa.Cmwlth. 2001), *petition for allowance of appeal denied,* 569 Pa. 686, 800 A.2d 935 (2002), this Court stated that the Fund is a statutory creature in which the General Assembly requires mandatory participation by those who will benefit by it. The Fund provides coverage to storage tank owners to clean up storage tank releases that pose a significant health risk to the general public. *M.H. Davis,* 789 A.2d at 403. Remedies are available when the fees are delinquent as LPM is well aware as it chose not to pay the past due registration fees until after the collection of the same was turned over to the Attorney General's office. The Fund clearly provides for ineligibility if the claimant does not meet certain eligibility requirements.

■ The fact that LPM properly registered the tanks and paid the required registration fees during the time the tanks were "actively" in use does not render it eligible to submit a claim for a release that occurred after the registration of the tanks expired. LPM stipulated that the necessary paperwork was not filed to register the tanks in Little's name after the expiration of the lease and further stipulated that DEP sent it registration renewal no-

tices for 2002, 2003 and 2004. Therefore, LPM was well aware that the tanks were required to be registered regardless of whether the tanks were actively being used to store product or whether they were not being actively used to store product. LPM stipulated that it did not pay the registration invoices because of a dispute over the ownership of the tanks not because the tanks were not actively in use.

■ Moreover, the fact that the tanks allegedly contained *de minimis* amount of product after 1999 did not take the tanks outside the definition of "underground storage tank" as LPM produced no evidence as to how much product actually remained in the tanks nor did the parties make such a stipulation.[8] In addition, it logically makes sense that if the tanks were not required to be registered under Section 503 of the Act, then the tanks were not required to be regulated and thus eligible for coverage under the Act.

Therefore, we agree with the Board that the tanks at issue herein were required to be registered in accordance with Section 503 of the Act. Accordingly, LPM's failure to comply with the registration requirements deems it ineligible to make a claim for reimbursement from the Fund. The Board's order is affirmed.

### *ORDER*

AND NOW, this 11th day of February, 2009, the order of the Underground Storage Tank Indemnification Board in the above-captioned matter is affirmed.

---

8. *See* 25 Pa.Code § 977.4 which excludes from the definition of an underground storage tank, a tank which contains a *de minimis* concentration of regulated substances.