## SOUTHEAST DELCO SCHOOL DISTRICT, Petitioner,

v.

## UNDERGROUND STORAGE TANK INDEMNIFICATION BOARD, Respondent.

Commonwealth Court of Pennsylvania.

Argued Oct. 9, 1997.

Decided March 17, 1998.

Robert M. DiOrio, Media, for petitioner.

Zella Smith Sutton, Harrisburg, for respondent.

Before FLAHERTY and LEADBETTER, JJ., and LORD, Senior Judge.

FLAHERTY, Judge.

Appellant, Southeast Delco School District (District), petitions for review from a final determination of the administrative agency, the Underground Storage Tank Indemnification Fund Board (Board). The Board is the final administrative forum to adjudicate appeals of claims for indemnification from the Underground Storage Tank Indemnification Fund (Fund). Both the Board and the Fund were created and are administered pursuant to the Underground Storage Tank and Spill Prevention Act (the Act)[1].

When the District's claim for indemnification from the Fund was denied by the Fund's Executive Director (Fund Director), the District appealed to the Board. The Board convened, considered the entire record, and issued an Order and Adjudication, dated March 20, 1997, finding that the District had not met the statutory criteria for eligibility under the Act. More specifically, the Board concluded (a) that it had not paid the current fee as required by Section 706(2) of the Act[2]; and (b) that the District did not convince the Board that the subject release occurred after February 1, 1994, both of which are required in order to meet the eligibility requirements of Section 706(5) of the Act.[3]

From the March 20, 1997 order of the Board, the District appealed to this Court. We now affirm the Board.

The District owns and operates a 30,000 gallon underground oil tank located in Sharon Hill, Pennsylvania. On March 11, 1994, the District's Maintenance Director (Maintenance Director), Joseph Shaw, a licensed engineer, discovered a surface spill of oil over the site of a pipe which carries oil from the tank to the high school. The site of the spill

---

1. The Act of July 6, 1989, P.L. 169, No. 32, *as amended*; 35 P.S. §§ 6021.101—6021.2104.

2. 35 P.S. § 6021.706(2).

3. 35 P.S. § 6021.706(5).

was in a grassy area between the tank and the high school. The Maintenance Director's crew noticed no oil at the site on the previous day.

After discovering the oil, the site was excavated to expose the leaky pipe and to correct the same. The corrective action cost the District $147,000, for which the District submitted a claim for indemnification from the Fund on March 29, 1994. Before authorizing indemnification from the Fund, the Fund dispatched a field investigator (claims investigator) who examined the site and spoke with the District personnel. Shortly thereafter, the District received an unsigned letter, dated April 5, 1994, on the Fund's letterhead denying the claim because the appropriate fee required by the Act had not been paid.

On May 3, 1994, District appealed the denial of its claim to the Fund Director. By letter of August 8, 1994, the Fund Director affirmed the decision of the claims investigator denying indemnification to the District for the District's failure to pay the required tank capacity fees required under the Act. The Fund Director additionally cited the Act's requirement that the oil release must have occurred after the established date for payment of fees and inception of coverage under the Act, which was February 1, 1994.

About August 11, 1994, District appealed the Fund's denial of its claim to the Board and requested an administrative hearing pursuant to the regulations. The District's request was granted and a formal administrative hearing was held on March 1, 1996 before Presiding Officer Suzanne M. Hanlon (Hearing Officer), at which time evidence was presented by the District and by the Fund.

On July 22, 1996, the Hearing Officer issued Proposed Findings and Recommendations to the Board recommending that the District's failure to pay its capacity fees as required by the Act rendered it ineligible for payment and that the Fund's denial of in-

demnification was appropriate and should be affirmed. In her recommendation, Hearing Officer concluded that the evidence attempting to establish the date of the oil release was inconclusive.[4]

Appellate review of an agency adjudication is limited to determining whether the agency action is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of 2 Pa.C.S. §§ 501–508 (relating to practice and procedure of Commonwealth agencies) have been violated in the proceedings before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence.[5]

On appeal, the District raises two issues: 1) Did the Board abuse its discretion in determining that the District did not prove that the release occurred after February 1, 1994, and 2) did the Board err in determining that the District failed to comply with the statutory eligibility requirements for coverage under the Act because the District did not pay the invoiced tank fees until after the oil surfaced?

Initially, the District argues that the evidence it presented established that the oil release occurred after February 1, 1994, the earliest date that coverage was offered. The Act specifically provides in Section 706[6], that: "In order to receive a payment from the Fund, a claimant shall meet the following eligibility requirements:

(5) The claimant demonstrates to the satisfaction of the board that the release that is the subject of the claim occurred after the date established by the board for payment of the fee required by section 705(d)"[7]

The March 20, 1997 order of the Board states, "... that the School District did not demonstrate to the satisfaction of the Board that the subject release occurred after Feb-

4. S.R. at 55–65.

5. 2 Pa.C.S. § 704. *See also Slawek v. Board of Medical Education and Licensure*, 526 Pa. 316, 586 A.2d 362 (1991).

6. 35 P.S. § 6021.706.

7. The referenced "date established by the board for the payment of the [required] fee" is undisputed to be February 1, 1994. Section 705(d) of the Act is found at 35 P.S. § 6021.705(d).

ruary 1, 1994." The Board based this conclusion on the Hearing Officer's Findings of Facts, which were based mostly upon the testimony of the District's Maintenance Director, and include:

(14.) On March 11, 1994, Southeast Delco discovered a pool of heating oil on the grass. The pool was above a fuel line leading form the storage tanks to the boiler. (N.T.13).

(15.) The site was excavated and it was determined that the supply line between the tank and burner had deteriorated and perforated, permitting oil to leak out and percolate to the surface. (N.T. 22).

(16.) The amount of contaminated soil removed from the site totaled 900 tons. (N.T. 22–23, 31–40, Delco Ex. 6).

(17.) At the hearing, Joseph Shaw, the Director of Maintenance of Southeast Delco testified that the manufacturer of the tank provided the tank owners with a measuring stick for the tank and a tank conversion chart. The measuring stick measures the product in inches and fractions of an inch, which indicate various product levels.

(18.) There was an absence of change in the amount of product in the tank between January 28, 1994 and March 11, 1994, both measurements recording a level of 86 inches. (N.T. 22–23, 31–40, Delco Ex. 6)

(19.) Testimony was established at the administrative hearing that natural gas was used during the period from January 28, 1994 to March 11, 1994. (N.T. 49).

(20.) Mr. Shaw explained that the excavation for the tank measured approximately 50 feet long by 25 feet wide by 15 feet deep and that there was contamination around the pit tank. There was also a trench excavated from the tank to the school building, a distance of approximately 50 feet which was excavated to a width of 24 inches and a depth of 30 inches. (N.T. 33–36).

(21.) Mr. Shaw further testified that petroleum products can remain in the soil for extended periods of time, including days, weeks, months and even years. He further testified that once the soil was excavated and there was a large open pit on the Delco property, water would leak into the excavation. The water in the pit had a layer of oil on it of 1 to 2 inches. (N.T. 48)...."

From these findings of fact, Hearing Officer issued a determination that the evidence presented surrounding the date of the oil release was inconclusive.[8]

Although the Act imposes a heavy burden of proof on the claimant, the legislature has, nonetheless, given the Board the discretion to review the evidence and comply with the intent of the Act. The determination that the date of the oil spill was inconclusive is supported by the District's own testimony and evidence.

Without regard to the evidence presented by the Fund's claim's inspector, the District's own testimony that the fluid level in the tank did not change from January 28th through March 11th indicates that it is more likely than not that no oil leaked during that period of time or the fluid level would have diminished. Consequently, there is substantial evidence to support the finding by the Board that it is more likely than not that the oil leaked out of the tank prior to the January 28th reading.

Additional evidence supporting the Board's findings and conclusion is further testimony from the District that natural gas was used during the period from January 28, 1994 to March 11, 1994, during which time no oil would have been carried from the tank to the site of the March 11th spill (which was between the tank and the high school).

It is clearly consistent, based upon the testimony of the Maintenance Director that, although the surface spill was discovered on March 11, 1994, that the "release", which is the critical event under the Act, could have occurred at any time before or after February 1, 1994.

The Board did not abuse its discretion. The District did not meet its statutory bur-

8. S.R. at 55–65.

den of proof, i.e., "proving to the satisfaction of the Board" that the release occurred after February 1, 1994.[9] There is no case law which decides the issue of whether a late, but mandatory payment of fees into the Fund precludes indemnification under the Act. However, because the District is properly denied indemnification for failure to meet its burden of proof before the Board of the date of the oil release, this Court will not reach the issue of whether late payment of tank fees into the Fund is grounds for denying the claim altogether.

The evidence and testimony presented is consistent with the findings and the decision of the Board and constitute substantial evidence such that the decision of the Board is affirmed.

## ORDER

NOW, March 17, 1998, the March 20, 1997 Order and determination of the Underground Storage Tank Indemnification Fund Board in the above captioned matter is affirmed.