**YOUNG'S SALE AND SERVICE,**
Petitioner

v.

**UNDERGROUND STORAGE TANK INDEMNIFICATION BOARD and Underground Storage Tank Indemnification Fund, Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 1, 2009.

Decided July 20, 2009.

Reargument Denied En Banc
Sept. 23, 2009.

David J. Lanza, Camp Hill, for petitioner.

Carl D. Buchholz, III, Philadelphia, for respondent, Underground Storage Tank Indemnification Board.

BEFORE: SMITH–RIBNER, Judge, LEAVITT, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge LEAVITT.

Young's Sales and Service (Young's) petitions for review of an order of the Pennsylvania Underground Storage Tank Indemnification Board (Board) refusing to cover Young's costs to remedy leaking underground fuel storage tanks. In doing so, the Board adopted the recommendation of its hearing examiner that coverage be denied because fees owed by the prior owner of Young's property had not been paid, as required by the Storage Tank and Spill Prevention Act (Act).[1]

In 1999, David A. Young, owner of Young's, purchased property at 12 Capitol Hill Road, Dillsburg, from Wicker Enterprises, which had used the property as an automotive service center until 1995. On the site were four underground storage tanks. Three of the tanks had been used to store gasoline for sale and one had stored kerosene. The tanks were emptied by Wicker Enterprises when it closed the service station in 1995, although several inches of product remained in each tank. After purchasing the site, Young's registered the tanks with the Department of Environmental Protection for removal. In 2000, Young's hired a contractor to remove the tanks, as well as a consultant, Jan Peter Ilves, to supervise the removal project. During the removal, soil contamination was discovered around each tank. Young's incurred substantial costs to remove the tanks and to remedy the soil contamination.

On September 15, 2000, Young's submitted a claim to the Underground Storage Tank Indemnification Fund (Fund) seeking reimbursement for its remediation costs. When Young's submitted its claim, it did not know what, if any, fees had not been paid to the Fund by Wicker Enterprises. On September 22, 2000, Jennifer Goodyear, a claims investigator for the Fund, sent a letter to Young's, requesting proof that all fees associated with all the tanks that were ever due under the Act had been paid. On November 17, 2000, Goodyear sent another letter informing Young's that it was not eligible for coverage because past-due "capacity and throughput fees have not been paid for this site." Reproduced Record at 178 (R.R. ——). When his claim was denied, Young appealed to the Executive Director of the Fund. Young's produced checks from 1994 and 1995 establishing that $8,040.73 had been paid to the Fund by Wicker Enterprises as throughput and capacity fees while it was operating the station on the property. However, the Executive Director denied Young's claim on November 9, 2006. Thereafter, Young's sought an administrative hearing from the Pennsylvania Insurance Department.

At the hearing, the Fund's third-party insurance investigator, Marion MacDonald testified that the soil contamination was caused by gasoline and kerosene. In addition, Goodyear, the Fund's investigator, testified that Ilves, Young's consultant, informed her early in the investigation that he believed the contamination was 80 to 90 percent gasoline and the rest was kerosene.

The Presiding Officer found, as fact, that $4,504.37 in fees, interest, and late charges were owed to the Fund. The Presiding Officer did not specify whether the unpaid fees were throughput or capacity

---

1. Act of July 6, 1989, P.L. 169, No. 32, *as amended*, 35 P.S. §§ 6021.101–6021.2104.

fees, to which tank the unpaid fees applied, or for what period of time the outstanding fees were owed. The Presiding Officer recommended that the Board affirm the denial of coverage for non-payment of fees, and the Board adopted that report. Young's now petitions this Court to review the Board's order.

Before this court, Young's argues that the Board erred in denying its application for its remediation costs.[2] Young's offers alternative theories to support its claim that it is eligible to have its costs reimbursed even though the prior owner of the property may have been delinquent in the payment of some of the fees.

We begin with a review of the Act, which created the Fund for the purpose of reimbursing underground storage tank owners who "incur liability for taking corrective action ... caused by a sudden or nonsudden release from" the tanks. Section 704(a)(1) of the Act, 35 P.S. § 6021.704(a)(1). Every owner of an underground fuel storage tank is required to "demonstrate financial responsibility by participating in the [Fund]." *Id.* Owners participate by paying two types of fees to the Fund, capacity fees and throughput fees. These fees are intended to "provide an amount sufficient to pay outstanding and anticipated claims against the [Fund]." Section 705(d)(1) of the Act, 35 P.S. § 6021.705(d)(1). A capacity fee is assessed based on the gallon capacity of each tank, regardless of how much product is in that tank. Section 705(d)(2) of the Act, 35 P.S. § 6021.705(d)(2).[3] Capacity fees are not applicable to gasoline tanks, although they are applicable to kerosene tanks. *Id.* A throughput fee, also known as a gallon fee, is assessed for each gallon that is put in the tank. 25 Pa.Code § 977.12(b)(2).[4] Throughput fees are applicable only to gasoline tanks. *Id.*

Eligibility for reimbursement of remediation costs is governed by Section 706 of the Act. It sets forth the following requirements that a claimant must satisfy in order to receive a payment from the Fund:

(1) The claimant is the owner, operator or certified tank installer of the tank which is the subject of the claim.

(2) *The current fee required under section 705 has been paid.*[5]

2. Our scope of review is limited to a determination of whether the Board violated Young's constitutional rights, erred as a matter of law, or whether its findings of fact are supported by substantial evidence. *Southeast Delco School District v. Underground Storage Tank Indemnification Board*, 708 A.2d 881, 882 (Pa. Cmwlth.1998).

3. It states:

The owner or operator of an underground storage tank used to store heating oil, diesel fuel or other regulated substance as determined by the board shall pay a per gallon of tank capacity fee.

35 P.S. § 6021.705(d)(2). The regulation at 25 Pa.Code § 997.12(d) states:

An owner or operator which stores regulated substances including diesel, heating oil, used motor oil, kerosene and unknown substances ... may be assessed a capacity fee

of $.0825 per gallon of capacity, which amount is established in accordance with section 705(d)(2) of the act. 35 P.S. § 6021.705(d)(2) (For example, 10,000 gallons at $.0825 per gallon equals $825).

4. It states:

A[n underground storage tank] owner or operator storing gasoline ... may be assessed the following fees:

(2) Gallon fee. A gallon fee on all regulated substances entering a[n underground storage tank] of $.011 per gallon. (For example, 10,000 gallons at $.011 per gallon equals $110).

25 Pa.Code § 977.12(b)(2).

5. Section 705 of the Act provides expressly that "[t]he board, by regulation, shall establish fees to be paid by the owner." 35 P.S. § 6021.705(d)(1).

(3) The tank has been registered in accordance with the requirements of section 503.

(4) The owner, operator or certified tank installer has obtained the appropriate permit or certification as required under sections 108, 501 and 504.

(5) The claimant demonstrates to the satisfaction of the board that the release that is the subject of the claim occurred after the date established by the board for payment of the fee required by section 705(d).

(6) Additional eligibility requirements which the board may adopt by regulation.

35 P.S. § 6021.706 (emphasis added).

■ This Court has held that the "current fee" referenced in Section 705 signifies *all past due fees* and penalties owing on a tank. *Pickens (Estate of Sherman) v. Underground Storage Tank Indemnification Board*, 890 A.2d 1117, 1119 (Pa.Cmwlth.2006) (emphasis added).[6] Accordingly, even though Young's may not have been delinquent in its payment of fees to the Fund, its claim must be denied if the prior owner, Wicker Enterprises, was delinquent. Further, delinquent fees must be made current *before* contamination is discovered. A claimant has a "heavy burden" in proving eligibility for payment of a claim by the Fund. *Southeast Delco School District v. Underground Storage Tank Indemnification Board*, 708 A.2d 881, 883 (Pa.Cmwlth.1998); *Luther P.*

*Miller, Inc. v. Underground Storage Tank Indemnification Board*, 965 A.2d 398, 402 (Pa.Cmwlth.2009).

■ Young's offers an argument to avoid this Court's holding in *Pickens* that a "current fee" includes "past due fees," not just current fees. First, Young's notes that when dealing with empty, unused tanks, only capacity fees are owed, and capacity fees do not apply to gasoline tanks.[7] Next, because Wicker Enterprises stopped using the gasoline tanks in 1995, no throughput fees were assessable after that time. Young's never used the tanks, so it clearly never owed any throughput fees of its own. Because the contamination was not discovered by Young's until 2000, Young's contends that it should be eligible to recover costs for the cleanup associated with the gasoline tanks.

Young's makes this argument because it believes that the Act does not preclude a claim for one tank, for which all fees are current, even if fees on other tanks are not current. Stated otherwise, if all fees owing on one of several tanks had been paid, then the claimant should be eligible for coverage at least with respect to that tank. Contrary to the Fund's position that all fees must be paid for each "site," Young's asserts that "there are no site fees—there are only tank fees." Petitioner's Brief at 9. In support, Young's cites to the repeated reference to registration of "the tank" in Section 706 of the Act and the separate identification numbers for each

---

**6.** The "current fee" includes

all past due fees because if a tank owner had to pay only the fee for the current year to remain eligible, it would cause tank owners not to pay past due fees which would threaten the financial stability of the Fund. This would be contrary to the legislative purpose of the Tank Act to have a financially sound Fund to ensure that harmful releases be remediated.

*Pickens*, 890 A.2d at 1119 (adopting the reasoning of the Presiding Officer in that case). The dissent believed that by the words "current fee," the legislature meant something different from "past due fees," but its position did not prevail.

**7.** The Board does not take an adverse position on this point.

tank. Young's also observes that the Act does not state that the fees on all tanks on all properties owned by a claimant must be current before any claim may be presented. We agree with Young's.

As Young's points out, the Act itself speaks in terms of individual tanks. For example, in order to be eligible for Fund reimbursement a claimant must prove that it

(1) ... is the owner, operator or certified tank installer *of the tank which is the subject of the claim.*

(2) The current fee required under section 705 has been paid.

(3) *The tank* has been registered in accordance with the requirements of section 503.

Section 706(1), (3) of the Act, 35 P.S. § 6021.706(1), (3) (emphasis added). There is no reference in the Act to a "site" on which multiple tanks owned by a claimant are located. It follows that the legislature intended for "the current fee required under Section 705" to apply *per tank.*

However, we are unable to resolve the issue of Young's eligibility for Fund reimbursement. The Fund's witness testified to the amount of unpaid fees; however, that witness did not specify *which* fees were unpaid. The findings by the Presiding Officer are incomplete because he found simply that all "fees" were not paid, without specifying whether those unpaid fees were throughput or capacity fees. Without a finding on which assessments were not current and for which tank, the adjudication is incomplete.

Accordingly, we must vacate the Board's order and remand this matter for more specific findings on which fees, throughput or capacity, are owing, and on which tank and for what period of time. Only with such findings, can we address Young's argument that if all throughput fees were paid, then it is eligible to have its costs associated with the cleanup caused by gasoline contamination reimbursed by the Fund.

### *ORDER*

AND NOW, this 20th day of July, 2009, the order of the Underground Storage Tank Indemnification Board dated December 15, 2008, is hereby VACATED and the matter REMANDED for further consideration consistent with the attached opinion.

Jurisdiction relinquished.