Chief Justice CASTILLE, and Justices EAKIN, BAER, TODD, McCAFFERY, join the opinion.

70 A.3d 795

**YOUNG'S SALES AND SERVICE, Appellee**

v.

**UNDERGROUND STORAGE TANK INDEMNIFICATION BOARD and Underground Storage Tank Indemnification Fund, Appellants.**

Supreme Court of Pennsylvania.

Argued Nov. 29, 2011.

Decided June 17, 2013.

Carl D. Buchholz, III, Esq., Angela Marie Heim, Esq., Kimberly Ann Lapworth, Esq., John Christie McMeekin II, Esq., Rawle & Henderson, L.L.P., Philadelphia, for Underground Storage Tank Indemnification Board and Underground Storage Tank Indemnification Fund.

David J. Lanza, Esq., for Young's Sales and Service.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

### OPINION ANNOUNCING THE JUDGMENT OF THE COURT

Justice TODD.

Following the release of regulated substances from four underground storage tanks located on its property, Appellee Young's Sales and Service submitted a claim with Appellant Underground Storage Indemnification Fund (the "Fund") seeking reimbursement of the remediation costs it incurred. We granted review to consider whether the Commonwealth Court correctly held that Section 706(2) of the Storage Tank

Spill Prevention Act ("Spill Act" or the "Act"),[1] which conditions eligibility for reimbursement on tank fees having been paid, applies on a per tank basis. For the reasons that follow, we conclude it does not. Accordingly, we reverse the order of the Commonwealth Court, and we reinstate the order of Appellant Underground Storage Indemnification Board (the "Board") denying Appellee's claim.

■ In 1999, Appellee purchased property located at 12 Capitol Hill Road in Dillsburg, Pennsylvania (the "Property") from Wicker Enterprises ("Wicker"). Wicker used the Property as an automotive service station until 1995, when it ceased operations of the service center. In connection with Wicker's operation of the service station, the Property contained four underground storage tanks, three of which were located in the same excavation and used to store gasoline, and one of which was located in a separate excavation some 90 feet away and was used to hold kerosene. Wicker emptied all four tanks in 1995 when it ceased operation of its automotive service center; however, several inches of residual product remained in each of the four tanks. Upon purchasing the Property from Wicker, Appellee registered each of the tanks with the Pennsylvania Department of Environmental Protection for removal, and, in 2000, hired a contractor and consultant to remove the tanks. During the removal process, Appellee and the contractor discovered soil contamination around each tank. As a result, Appellee incurred substantial costs to remove the tanks and rectify the soil contamination. Because no holes were observed in the tanks or lines at the time of removal, it was considered likely that the release was the result of leaks at pipe junctions between the tanks and the product dispensers.

On September 15, 2000, Appellee thereafter submitted a claim to the Fund seeking reimbursement for the costs of remediation associated with the four tanks. Jennifer Goodyear, a claims investigator for the Fund, sent a letter to Appellee requesting the information the Fund needed to de-

1. Act of July 6, 1989, P.L. 169, No. 32, as amended, 35 P.S. § 6021.706.

termine Appellee's eligibility for claim payment, including proof that the tank fees the Spill Act requires had been paid.[2] Not having received all of the information requested, on November 17, 2000, Goodyear sent another letter informing Appellee that its claim was not eligible for coverage because records revealed that capacity fees owed on the kerosene tank and throughput fees owed on the gasoline tanks were not paid. The Fund closed Appellee's claim file, but, thereafter, reopened it twice to receive proof from Appellee of tank fee payment. Appellee produced checks from 1994 and 1995 establishing that Wicker paid $8,040.73 to the Fund while Wicker was still operating its service station on the Property. In the Fund's view, however, Appellee did not establish that tank fees were paid in full, and on that basis, again denied Appellee's claim in August 2006. Appellee sought review from the Executive Director of the Fund, who affirmed the Fund's denial of Appellee's claim. Appellee filed an appeal with the Board and requested a formal administrative hearing.[3]

Following the hearing, the Presiding Officer issued a report and recommendation, in which he assessed Appellee's eligibility for recovery against the several criteria listed in Section 706 of the Spill Act. *See* 35 P.S. § 6021.706. With regard to Section 706(2), which mandates that "[t]he current fee required under Section 705 has been paid," the Presiding Officer noted that delinquent tank fees will disqualify a claimant from eligibility for reimbursement. He reviewed the evidence of

2. Section 705 of the Spill Act requires an owner of an underground storage tank to pay a fee. 35 P.S. § 6021.705(d)(1). A capacity fee is assessed and paid with respect to tanks containing heating oil, diesel fuel or other regulated substance such as kerosene, and is calculated based on the gallon capacity of the tank, regardless of the amount of product actually in the tank. 35 P.S. § 6021.705(d)(2); 25 Pa.Code § 977.12(d); 25 Pa.Code § 977.12(b)(2). By contrast, throughput fees are assessed on tanks holding gasoline and calculated based on the amount of product actually contained in the tank at the time the fee is assessed. 25 Pa.Code § 977.12(b)(2).

3. The appeals process for claims submitted with the Fund is governed by 25 Pa.Code § 977.61. If a claim is denied, the tank owner may appeal to the Executive Director of the Fund. 25 Pa.Code § 977.61(a). A further appeal may be taken to the Board. 25 Pa.Code § 977.61(b). An appeal of the Board's decision is taken to the Commonwealth Court in accordance with 2 Pa.C.S.A. § 702. 25 Pa.Code § 977.61(c).

record to determine whether Appellee proved, as it asserted, that all applicable fees had been paid on its tanks, and found that Appellee did not sustain its burden of proof with regard to fee payment. *See* 35 P.S. § 6021.706(2). Specifically, the Presiding Officer found that only some of the tank fees had been paid in 1994 and 1995, a tank fee delinquency existed at the time Appellee's claim arose in 2000, and that $4,504.37 in tank fees, interest, and late charges remained outstanding. Accordingly, under Section 706(2), the Presiding Officer recommended that the Fund's determination that Appellee was ineligible for coverage of its claim due to its failure to pay tank fees in full be affirmed. In so doing, however, the Presiding Officer did not specify whether the fees that Appellee owed were throughput and/or capacity fees, nor did he specify the tank or tanks on which fees were outstanding.

Appellee filed exceptions to the Presiding Officer's report and recommendation with the Board. The main thrust of the exceptions was that Appellee remained eligible for coverage of the clean-up costs related to the gasoline tanks on its Property because, under the circumstances, no throughput fees were outstanding and only capacity tank fees that related to the kerosene tank were at issue.

The Board rejected Appellee's exceptions. It accepted the Presiding Officer's findings and concluded that Appellee did not prove its eligibility for recovery from the Fund by demonstrating that all outstanding tank fees were paid at the time the release was discovered and presented no evidence to support its contention that, since Wicker Enterprises stopped using the gasoline tanks in 1995 and the tanks were empty at the time of their removal in 2000, there could be no unpaid fees properly attributable to the gasoline tanks. The Board further observed that, even if it accepted Appellee's contention that Section 706(2)'s eligibility requirement is written in terms of individual tanks, the evidence indicated that the contamination which was remediated was related to all four of Appellee's tanks. Accordingly, the Board adopted the Presiding Officer's report and recommendation and affirmed the Fund's denial of Appellee's claim.

Appellee thereafter appealed to the Commonwealth Court. On appeal, Appellee reiterated its argument that, since the record demonstrated that no throughput fees were assessable on the gasoline tanks after 1995, and that it did not incur throughput fees of its own, it was eligible to recover the costs associated with the remedial efforts it took as to the gasoline tanks, even if capacity fees on the kerosene tank were outstanding. Stated differently, Appellee maintained that Section 706(2) does not preclude eligibility for recovery on a claim as to one tank, for which all fees are current, even if fees on other tanks are owed. Accordingly, Appellee urged the court to reject the contention put forward by the Fund and the Board that, under Section 706(2), coverage of its claim depended on its showing that both the throughput and capacity fees owed as to all four of the tanks had been paid.

In a published, unanimous opinion, a panel of the Commonwealth Court agreed with Appellee that the Spill Act "does not state that the fees on all tanks on all properties owned by a claimant must be current before any claim may be presented." *Young's Sales and Serv. v. Underground Storage Tank Indem. Bd.*, 978 A.2d 1051, 1055 (Pa.Cmwlth.2009). The court reasoned that, since Section 706 of the Spill Act refers to "the tank" in the singular when setting forth the requirements of eligibility for recovery from the Fund, and does not refer "to a 'site' on which multiple tanks owned by a claimant are located[,] [i]t follows that the legislature intended for 'the current fee required under Section 705' to apply *per tank*." *Id.* (quoting 35 P.S. §§ 6021.706, 6021.706(2)) (emphasis original).

Despite its construction of Section 706(2), however, the court determined it could not resolve the issue of Appellee's eligibility for claim payment. While acknowledging that the Fund's witnesses at the administrative hearing testified as to the amount in tank fees which had not been paid, the court observed that the witnesses did not specify which fees on which tanks were delinquent. *Id.* As a result, the court further noted that the Presiding Officer, in his report and recommendation, found only that all fees were not current and did not specify whether the unpaid fees were capacity or

throughput. *Id.* Concluding that the administrative adjudication was, therefore, incomplete, the court vacated the Board's order and remanded the case for more specific findings on which fees were owed, and on which tank, and for what time-period. *Id.* In the court's view, such findings were essential to its ability to address Appellee's argument that, in the event all throughput fees were paid, then it is eligible for Fund reimbursement of the costs associated with the cleanup caused by gasoline contamination. *Id.*

The Board and the Fund (collectively "Appellants") petitioned this Court for allocatur, seeking our review of the Commonwealth Court's ruling that Section 706(2)'s eligibility requirement applies on a per tank basis. We granted review. *Young's Sales and Serv. v. Underground Storage Tank Indem. Bd.,* 609 Pa. 500, 17 A.3d 331 (2009) (order).

As reflected in the General Assembly's legislative findings that accompany the Spill Act, the Act is premised on the recognition that: Pennsylvania's lands and waters "constitute a unique and irreplaceable resource from which the well-being of the public health and economic vitality of this Commonwealth is assured;" these resources have been contaminated by releases from both active and abandoned storage tanks of regulated substances;[4] contamination of this sort threatens the well-being of affected residents and must be prevented through improved safeguards on storage tank construction and installation; complete restoration of contaminated resources is difficult; and corrective action, when required, is costly. 35 P.S. § 6021.102(a)(1)-(6). In addition, the Act is founded on the General Assembly's declaration that storage tank releases of regulated substances pose a threat to the

4. Under the Spill Act, a "regulated substance" is: "An element, compound, mixture, solution or substance that, when released into the environment, may present substantial danger to the public health, welfare or the environment," and which is a hazardous substance under the federal Comprehensive Environmental Response, Compensation, and Liability Act of 1980, a petroleum product, or another substance whose containment, storage, use or dispensing may present a hazard to the public health and safety or the environment, as determined by the Commonwealth's Department of Environmental Resources. 35 P.S. § 6021.103.

public health and safety of the Commonwealth and that a legislative response geared toward preventing, detecting, and providing for the prompt remediation of such releases is essential. *Id.* § 6021.102(b).

To these ends, the Spill Act sets forth a scheme for the regulation of both aboveground and underground storage tanks that hold regulated substances. *See* 35 P.S. § 6021.103 ("Storage tank" is "[a]ny aboveground or underground storage which is used for the storage of any regulated substance."). In the Act, "underground storage tank" is a defined term, which means: "Any one or combination of tanks (including underground pipes connected thereto) which are used to contain an accumulation of regulated substances, and the volume of which (including the volume of the underground pipes connected thereto) is 10% or more beneath the surface of the ground." *Id.*

To encourage remedial efforts when leaks from underground storage tanks occur, Section 704 of the Spill Act created the Fund and directs it to reimburse owners, operators, and certified installers of such tanks who incur costs in taking corrective action. 35 P.S. § 6021.704(a)(1). For the most part, the Fund consists of the fees that Section 705 of the Act authorizes the Board to assess against and collect from underground storage tank owners. *Id.*[5] Under Section 705, the Board administers the process by which claims for reimbursement from the Fund are made and paid. *Id.* § 6021.705(b). As to the payment of claims by the Fund, Section 705 states: "Claims determined to be eligible shall be paid upon receipt of information clearly showing that reimbursable claim costs are reasonable, necessary and directly related to the release from the storage tank that is the subject of the claim." *Id.*

The eligibility requirements a claimant must meet for payment from the Fund are set forth in Section 706, which provides:

5. In addition to these fees from underground tank owners, monies flow into the Fund through the imposition of penalties for non-payment of fees or fraudulent reimbursement claims, as well as investment returns. 35 P.S. § 6021.704(a)(1).

*In order to receive a payment from the Underground Storage Tank Indemnification Fund, a claimant shall meet the following eligibility requirements:*

(1) The claimant is the owner, operator or certified tank installer of the tank which is the subject of the claim.

(2) *The current fee required under section 705 has been paid.*

(3) The tank has been registered in accordance with the requirements of section 503.

(4) The owner, operator or certified tank installer has obtained the appropriate permit or certification as required under sections 108, 501 and 504.

(5) The claimant demonstrates to the satisfaction of the board that the release that is the subject of the claim occurred after the date established by the board for payment of the fee required by section 705(d).

(6) Additional eligibility requirements which the board may adopt by regulation.

35 P.S. § 6021.706 (footnotes omitted) (emphasis added).[6]

Turning to the arguments of the parties, Appellants observe that Section 706(2) does not provide that a claimant's eligibility is determined on a per tank basis, but, rather, conditions eligibility on the payment of the fees Section 705 requires. Thus, Appellants argue, because both gallon and capacity fees were assessed under Section 705 in the instant case, Appellee must pay the payment of both types of fees, if it is to be deemed eligible for recovery under Section 706(2). Further, Appellants challenge what they see as the premise of the Commonwealth Court's decision: that, due to the presence of the singular term "tank" in Section 706 and the absence of any reference therein to a "multi-tank site," Section 706(2)'s must be construed to apply on a per tank basis. *See* 35 P.S. § 6021.706. Appellants claim the fundamental error in this approach is its disregard for the Spill Act's definition of

6. Section 706(2)'s requirement of tank fee payment is the only eligibility requirement among the several requirements listed in Section 706 at issue in this appeal.

underground storage tank. Based on that portion of the definition that describes such a tank as "[a]ny one or combination of tanks (including underground pipes connected thereto)," Appellants contend it plainly demonstrates that any reference to "tank" in Section 706 is not limited to the singular sense and includes more than just the vessel that holds the regulated substance. *See* 35 P.S. § 6021.103. Therefore, Appellants maintain, where, as in the instant case, "the current fees are not paid on any tank in a multi-tank site, the owner is not eligible under the Act for recovery of remediation expenses stemming from a leak from a single tank, from two or more tanks, or from piping and dispensers common to all tanks." Brief of Appellants at 28.

Appellants also offer that the Commonwealth Court's construction, if permitted to stand, essentially permits underground storage tank owners to forgo the payment of fees on newer tanks that have manufacturer warranties that will cover the costs of leaks without risking eligibility for coverage from the Fund on tanks that are older and more susceptible to releases. The resulting decrease in fees, Appellants contend, will adversely impact upon the ability of the Fund to function and pay claims, and thereby impede the Spill Act's goal of encouraging tank owners to take corrective action. Appellants also assert that, if Section 706(2)'s eligibility requirement is deemed to be on a per tank basis, in cases where a leak emanated from several tanks, or from, as here, leaks from pipe junctions between tanks or product dispensers, it will be necessary to determine which, and how much, contamination originated from only those tanks on which the fees are current in order to properly apportion the costs of remediation and reimbursement. As this, Appellants submit, is an insurmountable task, the amount of reimbursement due on any number of claims will not be rightly calculated.

Lastly, Appellants point out that the Board is vested with the authority to handle claims and adopt regulations accordingly. As such, Appellants maintain, the Board is entitled to deference regarding its interpretation of Section 706(2) and its determination regarding the Spill Act's eligibility criteria. *See*

*Street Road Bar & Grille, Inc. v. Pa. Liquor Control Bd.,* 583 Pa. 72, 86 n. 8, 876 A.2d 346, 354 n. 8 (2005) (noting that administrative interpretations are entitled to deference as long as they are consistent with legislative intent).

In response, Appellee argues the Commonwealth Court correctly concluded that Section 706(2)'s fee payment requirement is determined on a per tank basis, noting there are no "site fees" under the Spill Act, only "tank fees." Echoing the Commonwealth Court's reasoning, Appellee observes that, since Section 706 uses the term "tank" rather than "tanks," or "site," the Spill Act cannot be construed to base a tank owner's eligibility for recovery on a claim on the payment of the fees owed under Section 705 on multiple tanks. *See* 35 P.S. § 6021.706. Conceding the Spill Act defines "underground storage tank" to include a "combination of tanks," Appellee nonetheless contends this language does not refer to a multi-tank site, as Appellants assert, but refers to an inter-connected series of tanks holding the same type of substance. *See* 35 P.S. § 6021.103. Finally, Appellee argues our Court's holding herein will have no impact on whether future tank owners will choose to pay fees on only some of their tanks because the Property was purchased only after Wicker ceased its operations and after the spill had occurred. Ostensibly, Appellee believes the facts of this case present limitations on Appellants' concern for the Fund's economic survival.

As the instant appeal requires us to construe Section 706(2) of the Spill Act, we are guided by the rules provided in the Statutory Construction Act of 1972. 1 Pa.C.S.A. §§ 1501 *et seq.* Thereunder, "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." *Id.* § 1921(a). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." *Id.* § 1921(b); *Colville v. Allegheny County Retirement Bd.,* 592 Pa. 433, 444, 926 A.2d 424, 433 (2007). When, however, the words of the statute are not explicit, the General Assembly's intent is to be ascertained by considering matters other than statutory language, like the

occasion and necessity for the statute; the object it seeks to attain; the consequences of a particular interpretation; and administrative interpretations of its provisions. 1 Pa.C.S.A. § 1921(c); *Commonwealth v. Packer*, 568 Pa. 481, 488–89, 798 A.2d 192, 196 (2002). Where the General Assembly defines words that are used in the statute, those definitions are binding. *See Commonwealth v. King*, 595 Pa. 685, 689, 939 A.2d 877, 880 (2007). Otherwise, we are to construe the words and phrases in a statute "according to rules of grammar and according to their common and approved usage." 1 Pa.C.S.A. § 1903(a). Further, we presume that, in enacting legislation, "the General Assembly does not intend a result that is absurd, impossible of execution, or unreasonable." *Id.* § 1922(1).

In addition and importantly, in the Spill Act itself, the legislature gave this Court the following instruction regarding its construction: "This act ... shall be liberally construed in order to fully protect the public health, welfare and safety of the residents of this Commonwealth." 35 P.S. § 6021.109.

Our analysis begins with Appellants' focus on the Spill Act's definition of underground storage tank and their assertion it demonstrates that Section 706(2) is intended to apply to multiple tanks where, as here, the circumstances warrant it. In our view, the definition, by referring to "[a]ny one or combination of tanks (including underground pipes connected thereto) which are used to contain an accumulation of regulated substances," reveals the legislature's intent that an underground storage tank is not only a single tank that contains a regulated substance, but is also two or more tanks that serve the same function of containing regulated substances.[7] Also, in our view, Appellee's argument that a "combination of tanks" can refer only to two or several tanks that are connected by pipes and which hold the identical regulated substance is unavailing since the definition does not impose these additional qualifiers as to what constitutes a tank "combination." There-

7. The dictionary definition of "combination" is "the act of combining or the state of being combined" or "a number of things combined." The dictionary definition of "combined" is "taken as a whole or considered together; in the aggregate." *Webster's Unabridged Dictionary*, 408, 409 (2d. ed. 1998).

fore, given the Spill Act's definition of underground storage tank, Appellants are correct that Section 706(2)'s fee payment requirement may be construed to apply to all of Appellee's tanks, i.e., the "combination of tanks" located on its Property.

■ That said, the definition of "underground storage tank," is not, as Appellants argue, presently dispositive. As Appellee aptly observes, in specifying the eligibility requirements for recovery from the Fund, Section 706 does not include that phrase, but rather, uses the term "tank" throughout. *See* 35 P.S. § 6021.706. Thus, whether, in this context, the legislature intended for the word "tank" in Section 706 to be taken literally or to be understood as an abbreviated reference to the term "underground storage tank" and, by necessary implication, its definition, is an open question that renders Section 706(2) ambiguous. Accordingly, we turn our attention to the factors we are permitted to consider when construing a statutory provision that is less than clear. *See* 1 Pa.C.S.A. § 1921(c).

In this regard, we find the consequences of not construing Section 706(2) with the Spill Act's definition of underground storage tank in mind, and adopting, instead, the Commonwealth Court's per tank construction, problematic. As Appellants point out, if Section 706(2) is construed to apply per tank, owners could decide not to pay the fees they owe on newer tanks and rely on manufacturer warranties for said tanks, should leaks occur, knowing they will be remain eligible for at least some recovery from the Fund on their older tanks that fail. As a result, payouts from the Fund could exceed its funding and impact the Fund's financial security. In turn, the critical role the Fund is to play in advancing the Spill Act's aims of encouraging the prompt remediation of underground storage tank releases and protecting the Commonwealth's citizens from the adverse effects of such releases could be impeded. We recognize that the consequences the Spill Act imposes on unpaid fee balances aim to deter such conduct by owners. *See, e.g.*, 35 P.S. § 6021.705(e) (imposing a monetary penalty on unpaid fee balances); *id.* § 6021.1301 (withholding or revoking permits to applicants who violate the Spill Act);

*id.* § 6021.1306 (providing for criminal penalties for violations of the Spill Act). However, Appellants, who administer both the Fund's sources of revenue and the claims it pays out, have persuaded us that the Commonwealth Court's per tank construction of Section 706(2) poses a threat to the Fund's long-term solvency. Further, were we to agree with the Commonwealth Court and conclude that recovery from the Fund is on a per tank basis, it opens up the possibility that, for a given claim, some tanks will be covered and some tanks will not. In these circumstances, for the Fund to make payments for only those tanks that are covered, it would be necessary to apportion the costs of remediation between or among tanks. Appellants have also persuaded us that the accurate allocation of the cleanup costs associated with one tank, as opposed to another, would be a difficult and time-consuming endeavor, if not, practically speaking, an impossible task, and one likely to undermine the Fund's efficient and fair functioning. In point of fact, the Spill Act has no provisions for allocating the costs of cleanup between or among different tanks, or assigning the burden of proving such allocations—it simply does not contemplate such an effort. And, last, we give due credit to the Board's view of Section 706(2), as it is the entity the legislature has entrusted with claim administration.

Thus, based on the consequences of the alternative constructions of Section 706(2) here presented, the occasion for the Spill Act's passage, the aims of the Act, the Board's administrative interpretation, and the legislature's stated preference for a liberal construction of the Act that protects the public health, safety, and welfare, we read Section 706 as including the Spill Act's definition of underground storage tank for purposes of construing Section 706(2). Accordingly, we hold that the tank fee payment eligibility requirement in Section 706(2) does not apply on a per tank basis. We further hold that, in the instant case, Section 706(2) requires the payment of the fees owed on the four underground storage tanks Appellee owned.[8]

8. The claim Appellee submitted to the Fund asked for the reimbursement of remediation costs associated with all the tanks it owned. We

For these reasons, we reverse the Commonwealth Court. Moreover, in light of our holding that Section 706(2) does not apply on a per tank basis, there is no need for the remand the Commonwealth Court ordered to determine which fees on which of Appellee's tanks are outstanding. Rather, because it has been conclusively determined that Appellee did not pay all of the tank fees owed, we reinstate the order of the Board denying Appellee's claim.

Jurisdiction relinquished.

Former Justice ORIE MELVIN did not participate in the decision of this case. Justices BAER and McCAFFERY join the opinion.

Justice SAYLOR files a concurring opinion in which Chief Justice CASTILLE joins.

Justice EAKIN files a concurring opinion.

Justice SAYLOR, concurring opinion.

I agree that the Underground Storage Tank Indemnification Board's adjudication should be reinstated. However, I reach this conclusion based on the nature of the claim that was submitted to the Fund, and not on the premise that Section 706 implicitly incorporates the statute's definition of "underground storage tank" into its substantive provisions. Therefore, I cannot join the reasoning of the Opinion Announcing the Judgment of the Court ("OAJC").

As the Commonwealth Court correctly observed, Section 706 of the Storage Tank and Spill Prevention Act speaks in terms of individual tanks. *See Young's Sale & Serv. v. Underground Storage Tank Indem. Bd.*, 978 A.2d 1051, 1054 (Pa.Cmwlth.2009). This is reflected in the list of preconditions to receipt of indemnification from the Fund. Among such prerequisites are that: "(1) [t]he claimant is the owner, operator or certified tank installer of *the tank* which is the subject

do not today consider whether Section 706(2) conditions an owner's eligibility for reimbursement from the Fund on the payment of the fees on tanks that are not part of its claim.

of the claim[;] (2)[t]he current fee required under section 705 has been paid [; and] (3) *[t]he tank* has been registered in accordance with the requirements of section 503." 35 P.S. § 6021.706 (emphasis added). *See generally* OAJC, *slip op.* at 8–9 (listing all six prerequisites). Thus, as can be seen—particularly in items (1) and (3)—the requirements are phrased in terms of the singular: "the tank" from which there was a release.[1] Notably, there is nothing in Section 706, read as a whole, to suggest a fee-currency requirement as to multiple tanks. Interpreting Section 706 to subsume such a mandate because subsection (2)—which does not use the term "tank" or "underground storage tank"—references a fee described in a different section of the Act, seems tenuous at best. This is particularly true because the word "fee" is cast in the singular.[2] It thus seems more likely that subsection (2)'s reference to "[t]he current fee required under section 705" signifies the fee for "the tank" that is the subject of the claim. *See generally O'Rourke v. Commonwealth,* 566 Pa. 161, 173, 778 A.2d 1194, 1201 (2001) (noting that statutory words should be read with reference to the context in which they appear).

The OAJC also suggests that the statutory definition of "underground storage tank" can be made to depend on the features of a particular claim lodged with the Fund. *See* OAJC, *slip op.* at 13 (indicating that the "combination" here is all tanks owned by Appellee); *id.* at 15 n. 8 (suggesting that this result obtains because Appellee requested reimbursement for all of the tanks located on his property). This seems likely to lead to confusion concerning the appropriate standard for determining when multiple tanks constitute a "combination" for purposes of the statutory definition—and, by extension, for

1. The OAJC avoids the obvious singular character of the word "tank" by suggesting it may be "an abbreviated reference" to "underground storage tank," a technical term defined by statute. OAJC, *slip op.* at 13. It seems improbable that the General Assembly would utilize such an abbreviation after going to the trouble of defining "underground storage tank," particularly as that term is defined in terms of "one or [a] combination of tanks." 35 P.S. § 6021.103.

2. The other indemnification prerequisites are also stated in the singular: subsection (4) refers to "the permit or certification," and subsection (5) references "the release" that is the subject of the claim.

purposes of Section 706(2). The definitional section of the Act is unhelpful, as it is silent on the question of how to ascertain whether multiple tanks form a "combination." *See* 35 P.S. § 6021.103. The OAJC, for its part, arguably offers two distinct standards, *compare* OAJC, *slip op.* at 13 (implying that a "combination" is all tanks on a landowner's property), *with id.* at 15 n. 8 (suggesting that a "combination" is all tanks subsumed within a single claim), which I believe will only add to the confusion.

I note as well that the OAJC's ultimate disposition is based almost entirely on its view of the consequences of reading Section 706 as applying to a single tank. In this regard, the OAJC states that the Appellants "have persuaded us" that the Fund's solvency would be threatened by such a reading. OAJC, *slip op.* at 14. Critically, however, the OAJC does not cite to any factual finding or other evidence of record that could support the concept that this is a likely outcome. The "persuasion" referenced by the OAJC thus appears to be based entirely the assertions that the agency makes in its brief.

It would be preferable, in my view, to recognize that, pursuant to the most natural reading of Section 706 as contemplating a single tank, that provision simply does not purport to specify how the Fund should handle a claim, such as the present one, that includes multiple tanks. Because of the lack of statutory guidance, the question is appropriately left to the agency's discretion to resolve. *See Am. Petroleum Inst. v. EPA*, 706 F.3d 474, 480 (D.C.Cir.2013) (recognizing that "an agency may flesh out the interstices of a technical regime"); *see also S & H Riggers & Erectors, Inc. v. Occupational Safety & Health Review Comm'n*, 659 F.2d 1273, 1283 n. 12 (5th Cir.1981) ("[T]he decision whether to fill the interstices in a statutory scheme by rulemaking or by ad hoc adjudication 'is one that lies primarily in the informed discretion of the administrative agency'" (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 203, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995 (1947))). Here, the Board resolved the dispute by observing that the soil contamination stemmed from the regulated substances in

both the kerosene tank and the gasoline tanks. It concluded, therefore, that Appellee bore the burden to prove fee currency as to all such tanks as a condition of indemnification. *See In re Young's Sales & Svc.*, No. UT06–12–014, Adjudication and Order, at 4–5 (Underground Storage Tank Indemnification Board, Dec. 15, 2009), *reproduced in* R.R. 407–08. Because Appellee failed to carry its burden, the Board denied relief. In my view, the Board acted within its discretion in disposing of the claim in this manner.[3]

In light of the above, I agree with the OAJC to the extent it may be understood to conclude that, for purposes of the present controversy, and in view of Appellee's particular circumstances and the scope of its claim, "Section 706(2)'s fee payment requirement may be construed [as it was by the Board] to apply to all of Appellee's tanks[.]" OAJC, *slip op.* at 13. However, I see no need to reach this conclusion by applying the definition of "underground storage tank" or otherwise determining that Section 706 specifies that recovery from the Fund was not intended by the Legislature to be established on a per-tank basis. Perhaps the Commonwealth Court's decision to remand for further agency findings led the agency to frame the issue for our review in such terms, which we then adopted for purposes of the allocatur grant. *See Young's Sales & Svc. v. Underground Storage Tank Indemnification Bd.*, 609 Pa. 500, 501 17 A.3d 331, 331 (2011) (*per curiam*) (questioning whether "eligibility for recovery from the Underground Storage Tank Indemnification Fund is on a 'per tank' basis"). Nevertheless, for the reasons given above, I am able to discern from the record before us that the agency-level adjudication was proper under the circumstances, without overlaying a judicial gloss on Section 706 stating that the word "tank" connotes a combination of several tanks.

---

**3.** If Appellee had been able to prove fee currency on a subset of the tanks, and that those tanks were alone responsible for the remediation costs for which Appellee was seeking indemnification, perhaps it could have sought to amend its claim. In that event, the question would have arisen whether fee delinquency on the intact tank(s) was fatal to its amended claim. Appellee did not, however, seek to amend, and hence, that question never arose before the agency.

Accordingly, I would reverse the order of the Commonwealth Court and remand for reinstatement of the Board's order without construing Section 706(2) to contain an implicit reference to a "combination" of tanks.

Chief Justice CASTILLE joins this Concurring Opinion.

Justice EAKIN, concurring opinion.

I agree with the lead Justices' view the requirement in § 706(2) does not apply on a per tank basis and instead applies to all underground storage tanks on the premises.[1] Unlike the lead Justices, I find § 706(2) is not made ambiguous by the use of the word "tank" in other subsections of § 706. *See* Opinion Announcing the Judgment of the Court Slip Op., at 13. Subsection (2) does not use the word "tank"; it refers to "the current fee" required under section 705. 35 P.S. § 6021.706(2). Section 705 in turn uses the term "underground storage tank," *id.*, § 6021.705, which is defined as "[a]ny one or combination of tanks." *Id.*, § 6021.103. Thus, the plain meaning of the statute indicates the fee referred to in § 706(2) is the payment of fees on "any one or combination of tanks," being therefore not simply a single tank, but all tanks located on the premises. As the plain meaning establishes which fees must be paid, there is no need to discern legislative intent or afford administrative deference. While my analysis differs, I agree with the lead Justices' outcome concerning fee payment eligibility, and hence concur.

1. "Underground storage tank" is defined as "[a]ny one or combination of tanks (including underground pipes connected thereto) which are used to contain an accumulation of regulated substances, and the volume of which (including the volume of the underground pipes connected thereto) is 10% or more beneath the surface of the ground." 35 P.S. § 6021.103.