**[J-71-2022] [MO: Brobson, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | |
|---|---|
| DR. TIMOTHY AND DEBRA SHROM, | : No. 21 MAP 2022 |
| | : |
| Appellees | : Appeal from the Order of the |
| | : Commonwealth Court dated August |
| | : 5, 2021, at No. 637 CD 2020 |
| v. | : Reversing the June 22, 2020 Order |
| | : of the Underground Storage Tank |
| | : Indemnification Board at No. UT19- |
| PENNSYLVANIA UNDERGROUND | : 03-015 and Remanding. |
| STORAGE TANK INDEMNIFICATION | : |
| BOARD, | : ARGUED: October 25, 2022 |
| | : |
| Appellant | : |

**CONCURRING OPINION**

**JUSTICE MUNDY**                                    **DECIDED: April 19, 2023**

I would find that the provision at issue, Section 706(3) of the Storage Tank and Spill Prevention Act (the "Act"), *see* 35 P.S. § 6021.706(3), is materially ambiguous. I also believe the ambiguity should be resolved in Appellees' favor. As the majority concludes the provision unambiguously allows for the late payment of fees, *see* Majority Op. at 34, I respectfully concur in the result. Section 706 states, in full:

In order to receive a payment from the Underground Storage Tank Indemnification Fund, a claimant shall meet the following eligibility requirements:

(1) The claimant is the owner, operator or certified tank installer of the tank which is the subject of the claim.

(2) The current fee required under section 705 has been paid.

(3) The tank has been registered in accordance with the requirements of section 503.

(4) The owner, operator or certified tank installer has obtained the appropriate permit or certification as required under sections 108, 501 and 504.

(5) The claimant demonstrates to the satisfaction of the board that the release that is the subject of the claim occurred after the date established by the board for payment of the fee required by section 705(d).

(6) Additional eligibility requirements which the board may adopt by regulation.

35 P.S. § 6021.706.

Unlike the majority, I do not view prerequisites (2) or (5) as informing the interpretation of (3), which requires that the tank must have been registered in accordance with Section 503. Addressing (5) first, that provision compares the date *of the release* with the "date established by the board for payment of the fee required by section 705(d)." 35 P.S. § 6021.706(5). As such, 706(5) says nothing about when the fees are actually paid – whether late or on time. It is analogous to an insurance provision indicating that losses occurring before the coverage period will not be indemnified. In this instance, the coverage period begins on a date certain and continues until the tank is decommissioned. *See infra* note 1. Moreover, it would make little sense to impose on the claimant the burden of proving "to the satisfaction of the board" a fact already contained in the board's own administrative records – namely, the date the fees were paid. Finally, reading 706(5) as a fee-payment requirement conflates it with 706(2). *See* Majority Op. at 32.

As for the phrase, "the date established by the board for payment of the fee," that refers to either February 1, 1994, *see* 25 Pa. Code §§977.4 (defining property damage), 977.33 (relating to fund coverage and exclusions); *accord* Brief for Appellant at 18 n.3, or perhaps some other date relating to the specific tank at issue if that tank came into

existence thereafter.[1]  Either way, as noted, it does not reflect a currency requirement in relation to the Section 705(d) capacity fees.  It therefore cannot form the premise of an argument based on the precept *expressio unius est exclusio alterius*.  *See* Majority Op. at 32 (citing *Shrom v. Underground Storage Tank Indemnification Bd.*, 261 A.3d 1082, 1092 (Pa. Cmwlth. 2021)).

I am also skeptical requirement (2) is of use in the present inquiry.  That provision indicates that, for benefits to be available, it is necessary that the "current" Section 705 fee has been paid.  Although it is tempting to view the word "current" as relating to the timing of the payment itself, even a late-paid fee can bring the account current.  In other words, there is little difference between a requirement that the "fee" mandated by Section 705 has been paid, and that the "current fee" mandated by Section 705 has been paid.  By its terms, Section 705 already requires currency and it imposes interest and penalties for lateness.  *See* 35 P.S. § 6021.705(e).[2]  The word "current" describes the fee, not the time of payment.[3]  Requirement (2) does not say *when* that "current fee" must have been

---

[1] Some Commonwealth Court decisions have recognized the provision as referring to February 1, 1994.  *See, e.g.*, *Se. Delco Sch. Dist. v. Underground Storage Tank Indemnification Bd.*, 708 A.2d 881, 881 & n.3 (Pa. Cmwlth. 1998); *see also M.H. Davis Estate Oil Co. v. Underground Storage Tank Indemnification Bd.*, 789 A.2d 398, 400 (Pa. Cmwlth. 2001) (reciting an administrative finding that "February 1, 1994 [is] the date established by the Underground Storage Indemnification Board for the payment of fees required by section 705 of the Tank Act").

The record is also replete with references to the same date.  For example, the capacity fee invoice issued by the Fund in 2017 for the tanks in question lists several requirements for the recipient to be eligible for claim benefits.  These include that "[t]he tank owner/operator can prove a release occurred on or after February 1,1994."  Invoice dated Dec. 5, 2017, at 2, *reprinted in* RR. 34a.

[2] I realize we disfavor interpretations that render as surplusage even a single statutory word.  In this instance, however, I believe the plain text of the Act requires it.

[3] It is also possible the word "current" refers to the fact that Section 705 fees are regularly adjusted based on actuarial data.  *See* 35 P.S. § 6021.705(d)(1), (2).

paid for the claimant to be eligible for benefits, just that it must have been paid. And it is notable that the English tense in both (2) and (3) is the same – "has been." *See* Brief for Appellant at 18-19 (pointing out that "Section 706(2) requires . . . that the 'current fee required under Section 705 **has been** paid' just as Section 706(3) requires that the tank '**has been** registered'" per Section 503) (bolding in original). Therefore, I would not rely on subsection (2) to suggest an inference that the fees required under subsection (3) can be paid late. If anything, the tense alignment in (2) and (3) suggests the reference point by which fees must be paid in both provisions is the same.[4]

In light of the above, I would evaluate subsection (3) on its own terms, and I would ultimately find it materially ambiguous, as I believe it is susceptible of two reasonable interpretations. *See generally JP Morgan Chase Bank v. Taggart*, 203 A.3d 187, 194 (Pa. 2019) (observing a statute is ambiguous when there are at least two reasonable interpretations). On the one hand, there is no dispute that tanks are required to be registered on an annual basis, *see* 35 P.S. § 6021.503; 25 Pa. Code §§ 245.42(g) (requiring timely payment of fees), 245.704(a) (same), and it seems unlikely the General Assembly intended to allow for strategic behavior, whereby a claimant can elect not to pay a tank's registration fees unless and until a release is discovered, and then obtain benefits by belatedly bringing the account current. *See MH Davis v. Underground Storage Tank Indemnification Bd.*, 789 A.2d 398, 404 (Pa. Cmwlth. 2001) ("Such an

---

[4] To the extent the majority opinion may be construed to rely on *MH Davis v. Underground Storage Tank Indemnification Board*, 789 A.2d 398 (Pa. Cmwlth. 2001), for the position that Section 706(2) contains "clear and unambiguous language" requiring capacity-fee currency as of the time a release is discovered, Majority Op. at 32, I find such implication troubling, for two reasons. First, *MH Davis* did not employ a plain-text analysis but relied exclusively on policy considerations as expressed by this Court regarding a different statute. *See MH Davis*, 789 A.2d at 402-03 (quoting *Dellenbaugh v. Pa. Med. Prof'l Liab. Catastrophe Loss Fund*, 756 A.2d 1172, 1174-75 (Pa. 2000)). More important, the issue of when 706(2) requires capacity-fee currency is not before this Court. Consequently, that issue should be left for another day.

outcome would countenance a situation where coverage is provided after loss is incurred and prior to payment of fees, allowing tank owners and operators to pay fees at their leisure."). In this regard, the Fund's reference to *Bergey v. Foster*, 604 A.2d 1209 (Pa. Cmwlth. 1992), is instructive. *See* Brief for Appellant at 16-17.

*Bergey* involved eligibility for Catastrophic Loss (CAT) Fund benefits under the Motor Vehicle Financial Responsibility Law, where eligibility was predicated on the vehicle's being registered and the CAT Fund fee having been paid. The claimant was injured in an accident several months after his vehicle's registration expired. He thereafter paid the overdue CAT Fund fee, renewed his registration, and sought benefits. The relevant portion of the Motor Vehicle Financial Responsibility Law defined an "ineligible claimant" as a "person who is the owner of a motor vehicle who has not complied with the registration requirements of Chapter 13 (relating to the registration of vehicles)." 75 Pa.C.S. § 1761(1) (repealed). As with Section 706(3) of the present Act, the statute in *Bergey* did not expressly state that such compliance had to be current at the time of the accident, but the reviewing court held that currency at that juncture was indeed a statutory prerequisite. Although *Bergey* is a decision by our intermediate court concerning a different statute, it does at least suggest the Fund's interpretation of the legislation presently under review is not unreasonable.[5]

---

[5] In this sense, I would not give any weight to Appellees' argument that the Fund is attempting to enforce a *de facto* administrative regulation that was not promulgated via the ordinary procedure. I would find, rather, that the Fund seeks to enforce a reasonable interpretation of the statutory text itself – just not the *only* reasonable interpretation.

Separately, I differ with the majority's suggestion that the Commonwealth Court's decision in *Luther P. Miller v. Underground Storage Tank Indemnification Board*, 965 A.2d 398 (Pa. Cmwlth. 2009), is distinguishable from this matter. *See* Majority Op. at 33. The Commonwealth's Court's proposed distinction was not based on any factual difference between the two cases, but on having rejected a different legal theory given by the tank owner. Identical facts led to a holding in *Luther P. Miller* that cannot be reconciled with the holding in this case. *Accord* Brief for Appellant at 25-26. I thus find unpersuasive the (continued…)

On the other hand, and as the majority develops, subsection (3) does not explicitly say tank registration fees must be current at the time the release is discovered in order for benefits to be available later on. *See* Majority Op. at 31-32. Further, the prefatory text indicates that "[i]n order to receive a payment from the Underground Storage Tank Indemnification Fund, a claimant shall meet" the eligibility requirements listed. 35 P.S. § 6021.706. Because the temporal focus of this language is on the receipt of benefits, it can reasonably be understood as allowing for belated compliance so long as the Fund does not actually pay out any benefits until all six requirements are satisfied. It may also be observed that none of the Act's enforcement provisions, *see* 35 P.S. §§ 6021.1301 - 6021.1315, indicates ineligibility for benefits is a consequence of late payment. Finally, the regulation relating to tanks not covered by the Fund does not include tanks for which the assessed fees were paid late. *See* 25 Pa. Code § 245.706.[6]

Given these competing interpretations, I would resolve the ambiguity consistent with the result arrived at by the majority. As the present dispute illustrates, there is no construction of the Act that can satisfy all legislative objectives. And while adopting the Fund's interpretation would disincentivize strategic behavior, I believe the construction endorsed by the majority in service of protecting the public health and welfare advances weightier governmental interests, *see generally* Majority Op. at 2, 16, 30, consistent with the General Assembly's legislative findings, *see* 35 P.S. § 6021.201, and its directives relating to the interpretation of the enactment. *See id*. § 6021.109.

_____

Commonwealth Court's reason for not following its own precedent. Indeed, it seems to me untenable that a single statutory provision can have two opposite meanings – one meaning when the litigant advances a weak argument and overlooks a better one (as occurred in *Luther P. Miller*), and another meaning when the litigant thinks of a new, more convincing argument so as to prevail on the same facts.

[6] These same regulations indicate failure to make timely payment of fees subjects the tank owner or operator to the enforcement provisions of the Act. *See* 25 Pa. Code §245.708. As explained, however, those provisions do not negate benefit eligibility.

Accordingly, I respectfully concur in the result.