PHILADELPHIA COUNTY DEPART-
MENT OF HUMAN SERVICES, DI-
VISION OF CHILDREN AND
YOUTH, Petitioner

v.

DEPARTMENT OF PUBLIC
WELFARE, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 7, 2008.

Decided July 10, 2008.

Michael Angelotti, Philadelphia, for petitioner.

Crystal M. Fritsch, Philadelphia, for intervenor, R.S.

BEFORE: SMITH–RIBNER, Judge, SIMPSON, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Philadelphia County Department of Human Services, Division of Children and Youth (DHS), petitions for review of a determination of the Department of Public Welfare (DPW) which upheld the order of the Bureau of Hearings and Appeals (Bureau) which directed that the Founded Report of child abuse against R.G.S. be expunged from the ChildLine registry. We reverse.

R.G.S. and A.B. are parents of R.S., a male child born July 27, 2001. A.B. was the mother of R.S., whose father, R.G.S., was entitled to visitations every other week-end. In October of 2005, R.S. stated to his mother, A.B., that "daddy licks me on my pee pee." Reproduced Record (R.R.) at 7. After another week-end visitation, R.S. told his mother that: "daddy licked me on [my] pee-pee again." R.R. at 8. In January 2006, R.S. told his mother that "daddy puts his pee-pee in my mouth." R.R. at 16. R.S. repeated these allegations several times to several parties including the Philadelphia Special Victims Unit police officers and the Philadelphia Children's Alliance. A confidential Child Protective Services (CPS) report was made to DHS. DHS determined the CPS report against R.G.S. to be "Indicated" and filed a Form CY–48.[1] R.G.S. appealed

---

1. An "Indicated report" is defined in the Child Protective Services Law (CPSL), 23 Pa. C.S. § 6303(a) in pertinent part as follows:

the allegation of sexual abuse against R.S. to the Bureau.

A.B., as natural guardian of R.S., filed with the Court of Common Pleas of Bucks County, family court division (trial court) a request for a Protection From Abuse (PFA) order identifying R.G.S. as the sole defendant, alleging R.G.S. was the perpetrator of sexual abuse of R.S.[2] On February 1, 2006, the trial court held a PFA hearing at which R.G.S. and A.B. were both represented by attorneys and testified. DHS did not present any testimony, and R.S. was not present at the PFA hearing.

The order of the trial court found in pertinent part as follows:

> I find that the petition for protection from abuse ... the allegations have been established.... Under the standards of preponderance of the evidence, I find that the abuse has occurred and I further find, in addition to whatever other relief is requested, that contact between the defendant and the child is to be prohibited until the custody case has been heard and a decision and a proper decision made in the custody proceeding.

> I find that there is enough reason to believe that the safety and welfare of the child are sufficiently at risk to warrant a total restriction of contact. I further believe that there is a possibility of assault[ive] behavior on Mr.[R.G.S.]'s part just by observing his manner here in court today....

Trial Court Transcript at 43.[3] The trial court then granted the PFA. The Order of the trial court was not appealed.

On June 5, 2006, DHS filed a Form CY–49, changing the status of the CPS report concerning R.G.S. from "Indicated" to "Founded" stating that the trial court had determined that abuse had occurred and "perpetrator licked child's penis."[4]

R.G.S. appealed the CPS report, and the Bureau held hearings on October 23, 2006 and March 22, 2007. DHS submitted exhibits pertaining to the CPS investigation, including the Form CY–49, and the transcript and order of the trial court. However, the exhibits pertaining to the CPS investigation were not accepted by the Administrative Law Judge (ALJ) for the truth of the matter asserted, as they could not be authenticated because there had been no testimony by the DHS caseworker

---

A child abuse report made pursuant to this chapter if an investigation by the county agency or the Department of Public Welfare determines that substantial evidence of the alleged abuse exists based on any of the following:
   (1) Available medical evidence.
   (2) The child protective service investigation.
   (3) An admission of the acts of abuse by the perpetrator.

2. *A.B., as natural guardian of R.N.S. v. R.G.S.,* No. A06–02–60939–A–19 (C.P.Ct., Bucks County, dated February 1, 2006). [Initials substituted for full names originally used in the caption and text of the Order.].

3. The pages of the Reproduced Record are not numbered between R.R. 25 and R.R. 61,

as required by the Rules of Appellate Procedure. We are, therefore, constrained to reference the page numbers of the Trial Court Transcript in lieu thereof.

4. A *"Founded Report"* is defined in the CPSL, 23 Pa.C.S. § 6303(a) in pertinent part as follows:

> A child abuse report made pursuant to this chapter if there has been any judicial adjudication based on a finding that a child who is a subject of the report has been abused, including the entry of a plea of guilty or nolo contendere or a finding of guilt to a criminal charge involving the same factual circumstances involved in the allegation of child abuse.

as to the contents of the documents. The ALJ ruled in pertinent part as follows:

> [R.G.S.] participated in a collateral hearing that dealt with a petition filed by the subject child's mother. The Court found that the Protection from Abuse Order was warranted. However, the Court made no finding that ... [R.G.S.] was the perpetrator of child abuse. The holding in *J.G.* is clear.[5] Where "a Founded Report of child abuse is based upon a judicial adjudication in a non-criminal proceeding, such as a dependency action, in which a court enters a finding that a child was abused, but does not issue a corresponding finding that a named perpetrator was responsible for the abuse, the named perpetrator is entitled to an administrative appeal before the Secretary of the ... [DPW] to determine whether the underlying adjudication of child abuse supports a Founded Report of abuse." *J.G.*
>
> Therefore, I find that the February 1, 2006 PFA hearing which was held before ... the [trial court] ... does not support a Founded Report of abuse.

ALJ Decision, at 7. The ALJ recommended that the Founded Report of abuse against R.G.S. be expunged.

On June 4, 2007, the Bureau's Regional Manager adopted the recommendation of the ALJ. On June 18, 2007, DHS filed a petition for reconsideration with the DPW, requesting reconsideration and reversal of the Bureau's decision. DHS argued that the ALJ erred as a matter of law in her interpretation and application of *J.G.* to the present controversy. On August 31, 2007, the Secretary of the DPW issued a final order upholding the June 4, 2007 order for the reasons stated by the Bureau. DHS, thereafter, petitioned our court for review.[6]

DHS contends that the DPW erred as a matter of law in upholding the Bureau's order which adopted a recommendation and adjudication that wrongly determined that the judicial determination was insufficient to support a Founded Report of child abuse under the CPSL, 23 Pa.C.S. § 6303 and wrongly analyzed and applied *J.G.* in making its determination.

Child abuse is defined in the CPSL, 23 Pa.C.S. § 6303(b)(1)(ii)-(iii) as:

> (ii) An act or failure to act by a perpetrator which causes nonaccidental serious mental injury to or sexual abuse or sexual exploitation of a child under 18 years of age.
>
> (iii) Any recent act, failure to act or series of such acts or failures to act by a perpetrator which creates an imminent risk of serious physical injury to or sexual abuse or sexual exploitation of a child under 18 years of age.

The trial court in the PFA action determined that "the abuse has occurred and ... that contact between the defendant and the child is to be prohibited." In addition to referring to the abuse by the "defendant," the trial court further identified R.G.S. in the same paragraph of the Order by using his full name. Trial Court Transcript, at 43. Thus, the trial court not only determined that the alleged child abuse occurred, but also named R.G.S. as the perpetrator by referring to him in the Order as "defendant" and also by his full name, so as to have sufficiently identified

---

**5.** *J.G. v. Department of Public Welfare,* 795 A.2d 1089 (Pa.Cmwlth.2002).

**6.** Our review is limited to a determination of whether constitutional rights have been violated, an error of law committed, or necessary findings of fact are unsupported by substantial evidence. *Bird v. Department of Public Welfare,* 731 A.2d 660 (Pa.Cmwlth.1999).

R.G.S. as the perpetrator, as required in our decision in *J.G.*

The matter of *J.G.* involved the appeal of a denied request for expungement of an indicated report of abuse in the nature of "Shaken Baby Syndrome" with allegations of child abuse against both the mother and the father of A.M., their son. Thereafter, J.G., the mother, filed an administrative appeal with DPW requesting that the Indicated report naming her as a perpetrator of abuse against A.M. be expunged. In a collateral proceeding, Children and Youth Services filed a petition to have the child declared dependent, alleging that A.M. was abused.[7] Such hearing was held and the trial court declared A.M. dependent, as he had been abused while under the supervision and control of both parents. Based upon this determination by the trial court, the Indicated report was changed to a Founded Report. J.G. appealed this change to the Bureau. The Bureau dismissed the appeal, as there is no right of appeal from a Founded Report of child abuse. After granting reconsideration to J.G., DPW affirmed the Bureau's order and J.G. appealed to our court which determined in pertinent part as follows:

A report is deemed founded if there has been any judicial adjudication based upon a finding that a child who is a subject of the report has been abused. Section 6303 of the Law, 23 Pa.C.S. § 6303. According to the Law, a judicial adjudication of abuse includes the entry of a plea of guilty or nolo contendere or a finding of guilt to a criminal charge involving the same factual circumstances involved in the allegation of child abuse. Id. These adjudications encompass not only a judicial finding that

the child has been abused, but that the perpetrator has been found guilty of abuse in a criminal proceeding. Where a Founded Report is based upon such an adjudication, an appeal would, in most instances, constitute a collateral attack of the adjudication itself, which is not allowed....

Where, however, a Founded Report is based upon a judicial adjudication in a non-criminal proceeding, such as a dependency action, in which the court enters a finding that the child was abused, but does not issue a corresponding finding that the named perpetrator was responsible for the abuse, a named perpetrator is entitled to an administrative appeal before the secretary to determine whether the underlying adjudication of child abuse supports a Founded Report of abuse....

* * *

As the underlying adjudication relied upon by DPW merely indicates a finding that A.M. was abused, and does not contain a definitive finding that J.G. is guilty of that abuse, J.G. is entitled to an administrative appeal to determine whether the adjudication of abuse constitutes sufficient evidence to support a Founded Report that J.G. committed that abuse.

*J.G.*, 795 A.2d at 1093. We found that DPW erred in denying J.G.'s appeal on the basis that there is no right of appeal because the underlying adjudication did not contain a definitive finding that J.G. was the perpetrator of the abuse. We reversed and remanded for DPW to conduct an administrative hearing to determine if

---

7. Under the Juvenile Act, a "dependent child" is one who is without proper parental care or control, subsistence, education or other care or control necessary for his physical, mental or emotional health or morals. A determination that there is a lack of such parental care or control may be based upon evidence by the parent that places the health, safety or welfare of the child at risk. Section 6302 of the Juvenile Act, 42 Pa.C.S. § 6302.

sufficient evidence existed to support a Founded Report that J.G. committed the abuse.

In the present controversy, only one person [R.G.S.] was alleged to have committed the abuse and only [R.G.S.] was named as a defendant. In *J.G.* where both the mother and father were named defendants and the dependency order found that abuse had occurred but did not indicate whether the mother or the father had committed the abuse, this Court was unable to ascertain from the order which person was the actual perpetrator of the abuse. Here, the trial court determined that "abuse has occurred", that "contact between the defendant and the child is to be prohibited" and "that there is a possibility of assaultive behavior on Mr.[R.G.S.]'s part just by observing his manner in court today." Trial Court Transcript, at 43. Thus, the trial court in the PFA hearing in which R.G.S. was the only defendant not only determined that there was enough evidence to support a finding of abuse in its adjudication, but also sufficiently identified R.G.S. as the perpetrator of that abuse. Where only one defendant is charged with abuse in a PFA action, only one person defends those charges, an adjudication finds that such abuse occurred and prohibits further contact between the victim child and that defendant, the PFA order is an adjudication containing a sufficient definitive finding upon which DHS based the Founded Report.

A Founded Report may be based upon any judicial adjudication finding that the child who is the subject of the report has been abused, including, but not limited to, criminal charges. The ALJ erred as a matter of law in relying upon *J.G.* to conclude that the PFA hearing in this case was not, on its own, able to support a Founded Report of abuse. Thus, the DPW did also err in adopting the recommendation of the ALJ and directing that the Founded Report of child abuse against R.G.S. be expunged.

Accordingly, we reverse the order of DPW expunging the Founded Report.

### ORDER

AND NOW, this 10th day of July, 2008 the Order of the Secretary, Department of Public Welfare, dated August 31, 2007, in the above-captioned matter is reversed.