**J.C., Petitioner**

v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 2, 2009.

Decided Aug. 27, 2009.

James E. Mahood, Pittsburgh, for petitioner.

Dennis W. McCurdy, Butler, for respondent.

BEFORE: BERNARD L. McGINLEY, Judge, and ROBERT SIMPSON, Judge, and JOSEPH F. McCLOSKEY, Senior Judge.

OPINION BY Judge SIMPSON.

J.C. (Mother) petitions for review from an order of the Department of Public Welfare, Bureau of Hearings and Appeals (DPW), denying her request for expungement from the ChildLine Registry.[1] Mother argues that the initial report of child abuse should be deemed "unfounded" by operation of law because a final determination was not made within the 60–day time limit of Section 6337(b) of the Child Protective Services Law (Law), 23 Pa.C.S. § 6337(b). Rejecting this argument, we affirm.

In February 2006, ChildLine forwarded a report of suspected child abuse to Butler County Children and Youth Services

---

1. ChildLine operates a statewide system for receiving reports of suspected child abuse, referring the reports for investigation and maintaining the reports. 23 Pa.C.S. § 6332. Reports of the suspected child abuse may be either "indicated," "founded," or "unfounded." In the case of "indicated" or "founded" reports, the information is placed in the statewide central register. 23 Pa.C.S. § 6338(a).

(CYS) for investigation. Reproduced Record (R.R.) at 11a; *see also* Notes of Testimony (N.T.), 7/23/2008, at 33–34. The subject of the abuse was Mother's then 10–year–old daughter, A.C. (Child). Sometime prior to April 5, 2006, criminal action was initiated against Mother. *See* R.R. at 11a–12a. On April 5, 2006, CYS filed a Child Protective Services Investigation Report (CY–48 form) with ChildLine listing the case status as "pending criminal court action" and designating the abuse perpetrator as Mother. *Id.* CYS noted on the CY–48 form: "Case is pending in both juvenile and in criminal court. CYS will wait until criminal process is complete." *Id.*

CYS made other notations on the CY–48 form. In a list of descriptions of types of abuse or neglect, CYS marked off the boxes next to the phrases "Bruises," "Punctures/Bites," and "Sexual Assault." *Id.* Further, CYS described the particular nature of the abuse: "Child disclosed a pattern of ongoing assaults; there are scars on her head, feet, nose, stomach. Child also made to eat feces, urine, vinegar." *Id.*

CYS continued to inform ChildLine of the pending criminal action against Mother. N.T. at 39–42; *see also* R.R. at 15a–17a. On May 11, 2007, Mother pled no contest to two counts of aggravated assault against Child. R.R. at 24a. CYS was aware of Mother's no contest plea on the date of entry. N.T. at 48. Mother contends the date of the plea ended the delay attributable to pending court action and triggered the 60–day investigation/final determination period in the Law.

More than 60 days thereafter, on July 17, 2007, Mother was sentenced to 15 to 30 months in a state correctional facility. Eight days later, on July 25, 2007, CYS filed a CY–48 form with ChildLine designating the case status as "founded." R.R. 13a–14a. The new CY–48 form repeated the particular nature of the abuse described in the previous CY–48 form. *Id.* The new CY–48 form also noted three factors that contributed to the abuse: (1) stress, (2) Mother's impaired judgment, and (3) the abuse Mother suffered as a child. *Id.*[2]

Following the "founded report" determination by CYS, Mother requested a hearing before DPW to expunge the child abuse report. An Administrative Law Judge (ALJ) hearing ensued where a single witness, CYS intake caseworker Sue Counts (Caseworker), testified. Caseworker testified that, while CYS was aware of Mother's no contest plea on the date of entry, CYS waited until after sentencing to determine the report as "founded." N.T. at 47–49. Caseworker testified that, based on her 17 years of experience, it was ChildLine's policy to "send back" CY–48 forms filed prior to sentencing. N.T. at 50.

The ALJ determined CYS filed a timely "founded report" with ChildLine. The ALJ concluded there was no requirement in the law that CYS had to change the report's status within 60 days of the plea. Further, the ALJ deemed it "not only reasonable but prudent to wait until after sentencing and, perhaps, [Mother's] appeal period [in the criminal proceeding] has run, to notify ChildLine of the change in status." R.R. at 124a. DPW then entered

---

**2.** ChildLine later requested CYS make corrections to the CY–48 form filed on July 25, 2007. N.T. at 46–47. CYS made the corrections to the CY–48 form and dated the corrections "9–17–07." R.R. at 13a–14a. The cor-

rections apparently included cancelling out the checked boxes next to the phrases "Bruises," "Punctures/Bites," and "Sexual Assault" and circling the box next to the phrase "Lacerations/Abrasions." *See id.*

an order dismissing Mother's appeal. R.R. at 145a.

 On appeal to this Court,[3] Mother asserts CYS failed to make a timely determination of a "founded report." Specifically, Mother argues the determination was untimely because CYS made the determination more than 60 days after the entry of her no contest plea. Mother asserts that indefinite suspension of the investigation/final determination period by pending court action is an unreasonable interpretation of the Law; therefore, resort to the statutory definition of "founded report" is necessary to determine the time limits for delay attributable to pending court action. By definition, the entry of a no contest plea is a judicial adjudication that triggers the determination of a "founded report." At this point, further delay is not attributable to pending court action.

Thus, Mother argues Section 6337(b) of the Law, when read in conjunction with the definition of a founded report set forth in Section 6303, 23 Pa.C.S. § 6303, required CYS to make a "founded report" determination within 60 days of her no contest plea. Mother argues the untimely status determination of the report requires the report be expunged. *See* 23 Pa.C.S. § 6337(b).

Section 6337(b) of the Law provides:

**Absence of other determination.**—If an investigation of a report of suspected child abuse conducted by the appropriate county agency pursuant to this chapter *does not determine within 60 days of the date of the initial report of the instance of suspected child abuse that the report is a founded report, an indicated*

report or an unfounded report, or un-less within the same 60–day period court action has been initiated and is responsible for the delay, the report shall be considered to be an unfounded report, and all information identifying the subjects of the report shall be expunged no later than 120 days following the expiration of one year after the date the report was received by [DPW].

23 Pa.C.S. § 6337(b) (emphasis added).

In turn, Section 6303 defines a "founded report" as:

A child abuse report made pursuant to this chapter if there has been *any judicial adjudication based on* a finding that a child who is the subject of the report has been abused, including *the entry of a plea of* guilty or *nolo contendere* or a finding of guilt to a criminal charge involving the same factual circumstances involved in the allegation of child abuse.

23 Pa.C.S. § 6303 (emphasis added).

In addition, DPW regulations promulgated under the Law provide, "when the CY–48 form is not filed with ChildLine within 60–calendar days of receipt of the report by ChildLine, the report shall be unfounded." 55 Pa.Code § 3490.69. DPW regulations further provide:

(b) To avoid expunction of a case as required by § 3490.69 (relating to reports not received within 60–calendar days) when a status determination cannot be made and the county agency has petitioned the juvenile court, an arrest has been made *or there is criminal court action pending, the county agency shall send a copy of the CY–48 form to ChildLine with one of the following status determinations:*

---

3. Our review in an expunction proceeding is limited to determining whether findings of fact were supported by substantial evidence, whether constitutional rights were violated, or whether errors of law were committed. *W.S. v. Dep't of Pub. Welfare,* 882 A.2d 541 (Pa.Cmwlth.2005).

(1) *Pending juvenile court action.*

(2) *Pending criminal court action.*

(3) Indicated, when there is substantial evidence that the child was abused.

(c) *The county agency shall submit a new CY–48 to ChildLine as required in subsection (a) when a final status determination is made under subsection (b).*

55 Pa.Code § 3490.67 (emphasis added).

Clearly, the Law contemplates a suspension of the investigation/final determination period where, as here, "court action has been initiated and is responsible for the delay." 23 Pa.C.S. § 6337(b). More importantly, the regulations contemplate a suspension of the 60–day period where, as here, there is criminal court action pending and the agency reports that status to ChildLine. 55 Pa.Code § 3490.67. In the absence of a challenge to the validity of the regulation quoted above, the regulation controls and commands the rejection of Mother's argument.

Moreover, we disagree with the premise of Mothers argument, that the entry of a no contest plea is a judicial adjudication.[4] Appellant's Br. at 14. We believe the phrase "judicial adjudication" as used in the Law is ambiguous and requires interpretation.

The term "adjudication" has a technical meaning. In the Juvenile Act, adjudication is the formal court determination of delinquency or dependency after hearing. 42 Pa.C.S. § 6341(a), (c). A child can be determined to be dependent based on vari-

ous circumstances, including being the victim of abuse, which must be proved by clear and convincing evidence. *Id.* This type of judicial adjudication in juvenile court is not the same as a no contest plea in adult criminal court.

Rather, we must determine at what point in a criminal proceeding a "judicial adjudication" occurs. The Law contains no definition of "judicial adjudication." Also, the Judicial Code does not define the phrase "judicial adjudication" beyond the juvenile court setting. Therefore, we may consider the common meaning of the term. 1 Pa.C.S. § 1903; *James Corp. v. N. Allegheny Sch. Dist.*, 938 A.2d 474 (Pa. Cmwlth.2007).

Black's Law Dictionary defines "adjudication" as "1. [t]he legal process of resolving a dispute; the process of judicially deciding a case. 2. *JUDGMENT.*" BLACK'S LAW DICTIONARY 45 (8th ed.2004) (emphasis added). Under this common meaning of the term "adjudication," a final, appealable judgment is anticipated. Thus, the common meaning of "judicial adjudication" is a final, appealable judgment rendered by a court.

■ For purposes of determining a report to be "founded" based on action in a pending criminal proceeding, we believe a judicial adjudication occurs at sentencing, and not earlier. *See Commonwealth v. Ford,* 315 Pa.Super. 281, 461 A.2d 1281 (1983) (judgment in a criminal case is the sentence and not the conviction; final judgment in a criminal case means sen-

---

4. In *dicta* in prior decisions, this Court paraphrased 23 Pa.C.S. § 6303 in such a way that could be interpreted as equating "judicial adjudication" with the entry of a no contest plea. *Phila. County, Dep't of Human Servs., Div. of Children & Youth v. Dep't of Pub. Welfare,* 953 A.2d 860 (Pa.Cmwlth.2008); *J.G. v. Dep't of Pub. Welfare,* 795 A.2d 1089 (Pa. Cmwlth.2002). However, our focus in *Philadelphia County* and *J.G.* was not on the pre-

cise definition and timing of a judicial adjudication; rather, the crucial issue in both cases was whether and in what circumstances an appeal from a "founded report" determination constituted a collateral attack on the underlying judicial adjudication. Further, in both *Philadelphia County* and *J.G.,* unlike in Mother's case, the judicial adjudications were made in non-criminal proceedings.

tence); *Dep't of Transp. v. Chrzanowski*, 95 Pa.Cmwlth. 568, 505 A.2d 1129 (1986) (in common parlance, a plea of guilty is equivalent to a conviction, but when the law speaks of a conviction it means a judgment of guilt; there can be no judgment until sentence is imposed). This construction is consistent with the common meaning of the phrase "judicial adjudication," and with case law.

Our construction is also consistent with the rule of statutory construction which invites our consideration of the consequences of an interpretation. 1 Pa.C.S. § 1921(c)(6). In this regard, we note the uncertainty in criminal proceedings associated with the liberal standard for withdrawing pleas before sentencing. *Compare* Pa.R.Crim.P. 591(A) (withdrawal of plea before sentencing) *with Commonwealth v. Gunter*, 565 Pa. 79, 771 A.2d 767 (2001) (withdrawal of plea after sentencing).

We also note the expected delay in reaching sentencing occasioned by a pre-sentence investigation. *See* Pa.R.Crim.P. 702(A); *Commonwealth v. Martin*, 466 Pa. 118, 134, 351 A.2d 650, 658 (1976) (courts must exercise utmost care in sentence determination if defendant subject to incarceration for one year or more). Here, Mother pled no contest to two counts of aggravated assault, each a second-degree felony, and she faced a potential 20–year maximum prison sentence. *See* 18 Pa.C.S. § 1103(2) (relating to sentencing of imprisonment for felony). Given the need for a thorough pre-sentence investigation report in cases like this, the delay between the date of the entry of the plea and the date of sentencing is anticipated.

■ These circumstances support our conclusion that, as used in the Law, a judicial adjudication in a criminal case occurs when an appealable judgment of sentence is imposed. Under this interpretation, a suspension of the 60–day investigation/final determination period does not end with the entry of a plea in a criminal case; rather, the suspension may continue until a final, appealable judgment of sentence is imposed.[5]

Because court action caused the delay in making the final status determination, the Law exempted CYS from making the determination within 60 days of the initial abuse report. Pursuant to DPW regulations, CYS filed a CY–48 form with ChildLine designating the case status as pending criminal court action. CYS acted expeditiously once court action no longer delayed the final status determination: eight days after Mother's sentencing, CYS determined the abuse report "founded" in a new CY–48 form filed with ChildLine.[6]

---

**5.** Our conclusion is consistent with DPW's regulation, with the common meaning of "adjudication," with case law and with the rules of statutory construction, as more fully discussed above. It is also consistent with a distinct but parallel line of authority relating to adjudications under the Administrative Agency Law. "Adjudication" is defined in pertinent part as "[a]ny *final order* ... by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made. 2 Pa.C.S. § 101 (emphasis added); *J.G. v. Dep't of Pub. Welfare*, 795 A.2d 1089 (Pa.

Cmwlth.2002) (founded report of child abuse is a final determination affecting property rights within definition of "adjudication" in Administrative Agency Law).

**6.** Mother argues that because CYS made changes to the July 25, 2007 CY–48 form on September 17, 2007, CYS did not determine the report "founded" until September 17. However, CYS made those changed at the behest of ChildLine. Further, the "founded report" determination made on July 25 did not change when CYS made the corrections on September 17. CYS acted pursuant to 23 Pa.C.S. § 6337(b) and 55 Pa.Code § 3490.67

In short, because we agree with the ALJ that CYS made a timely "founded report" determination, we reject Mother's argument that the report must be expunged. Accordingly, we affirm.

### ORDER

**AND NOW,** this 27th day of August, 2009, the order of the Department of Public Welfare is **AFFIRMED.**

in filing a "founded report" determination with ChildLine on July 25, 2007.