v.

**DEPARTMENT OF PUBLIC
WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 26, 2014.

Decided July 27, 2015.

Ronald D. Amrhein, Jr., Sharon, for petitioner.

Jeffrey Schmoyer, Senior Counsel, Pittsburgh, for respondent.

BEFORE: BONNIE BRIGANCE LEADBETTER, Judge, and PATRICIA A. McCULLOUGH, Judge, and JAMES GARDNER COLINS, Senior Judge.

OPINION BY Senior Judge JAMES GARDNER COLINS.

On August 6, 2014, the Department of Public Welfare[1], Bureau of Hearings and Appeals (DHS) issued a final order adopting the Recommendation of the Adminis-trative Law Judge (ALJ), which dismissed D.M.'s (Petitioner) appeal to expunge a founded report of child abuse maintained in the ChildLine Registry pursuant to the Child Protective Services Law (CPS Law).[2] Petitioner raises the following issues: (i) whether the record from Petitioner's criminal proceeding contains sufficient facts to serve as the basis for a "founded" report of child abuse; and (ii) whether a report of suspected child abuse based upon court action must be reported as "unfounded" if it is not finalized within sixty (60) days of the date of criminal sentencing. For the reasons that follow, we affirm.

The subject child (Child) was seventeen years old at the time of the events at issue and a resident at a facility for adolescents. (ALJ Opinion, Findings of Fact (F.F.) ¶¶ 1–4.) Petitioner was employed at the residential facility and in his capacity as a staff member and supervisor was responsible for Child's welfare. (*Id.* F.F. ¶¶ 6–7.) On January 19, 2012, DHS received an oral report of suspected child sexual abuse. (*Id.* F.F. ¶ 8.) The Office of Children, Youth and Families—Western Region (OCYF) investigated and on March 12, 2012, completed a report of its investigation (CY–48 report) with a status determination "pending criminal court action" based upon Child's allegations that Petitioner made sexual comments to Child and attempted to engage her in sexual activities while she was a resident at the facility where Petitioner was employed. (Certi-

---

1. Subsequent to the filing of petition for review, the Department of Public Welfare (DPW) became the Department of Human Services (DHS). *See* Act of September 24, 2014, P.L. 2458, 62 P.S. § 103 (effective November 24, 2014).

2. 23 Pa.C.S. §§ 6301–6384. The ChildLine Registry is a statewide system for receiving reports of suspected child abuse, referring reports for investigation, and maintaining those reports. 23 Pa.C.S. § 6332. A report of suspected child abuse may be either "indicated," "founded," or "unfounded." 23 Pa. C.S. §§ 6337, 6338. In the case of "indicated" or "founded" reports, the information is placed in the statewide central registry. 23 Pa.C.S. § 6338(a).

fied Record (C.R.) Item 3, March 12, 2012 CY–48 report; ALJ Opinion, F.F. ¶ 9.)

On March 12, 2012, criminal charges were also filed against Petitioner by the Office of the District Attorney of Mercer County for Unlawful Contact with a Minor, Harassment, Open Lewdness and Corruption of Minors based upon Petitioner's conduct towards Child. (*Id.* F.F. ¶ 10.) The information filed by the District Attorney stated that the harassment charge was based upon the following:

> with intent to harass, annoy, or alarm another person, [Petitioner] did communicate to or about such other person any lewd, lascivious, threatening or obscene words, language, drawings or caricatures, in that [Petitioner] did state to a seventeen (17) year old female victim "I bet you don't shave your [p- - -y]." and/or did ask the victim what kind of underwear she was wearing and/or did grab his penis in front of the victim while stating "I bet you can't handle this", said incident occurring at REDACTED in the Borough of Greenville, Mercer County, Pennsylvania

(C.R. Item 3, Criminal Information; ALJ Opinion, F.F. ¶ 12.) On February 5, 2013, Petitioner pled no contest to harassment and the remaining charges were withdrawn. (ALJ Opinion, F.F. ¶ 13.) On April 10, 2013, the Court of Common Pleas filed Petitioner's sentencing order. (*Id.* F.F. ¶ 14.) On August 21, 2013, the Court of Common Pleas filed the transcript of Petitioner's plea colloquy. (*Id.*)

On September 10, 2013, OCYF completed a second CY–48 report and, based upon Petitioner's plea of no contest to the charge of harassment, changed the status determination from "pending criminal court action" to "founded." (C.R. Item 3, September 9, 2013 CY–48 report; ALJ Opinion, F.F. ¶ 15.) The September 10, 2013 CY–48 report concluded that Peti-

tioner had engaged in sexually explicit conversations with Child that met the criteria for sexual abuse or exploitation under the CPS Law. (C.R. Item 3, September 9, 2013 CY–48 report; ALJ Opinion, F.F. ¶ 16.) On September 20, 2013, Petitioner was informed that his name was listed on the ChildLine registry with a status determination of "founded." (ALJ Opinion, ¶ 17.) On September 26, 2013, Petitioner requested a hearing to determine whether the report should be maintained or expunged and that hearing was held before the ALJ on February 3, 2014. (C.R. Item 2, Appeal Request; C.R. Item 7, Hearing Transcript (H.T.); ALJ Opinion, F.F. ¶ 18.)

On July 28, 2014, the ALJ issued a report and recommendation concluding that Petitioner's appeal should be dismissed and the report of child sexual abuse should be maintained as "founded" on the ChildLine Registry. The ALJ based this conclusion on the finding that Petitioner was a perpetrator within the meaning of the CPS Law and Petitioner's no contest plea to harassment was based upon the same facts and circumstances giving rise to the report of child sexual abuse. (ALJ Opinion at 14–15.) The ALJ also concluded that the CPS Law and implementing regulations require OCYF to file a new CY–48 report once a final status determination has been made, but do not require the new CY–48 report to be filed within 60 days of an alleged perpetrator's sentencing order. (*Id.* at 13.) DHS issued an August 6, 2014 order adopting the ALJ's report and recommendation in its entirety, and Petitioner petitioned this Court for review.

 Initially, Petitioner argues that his plea to the criminal charge of harassment does not establish that he was a perpetrator within the meaning of the CPS Law and it is therefore insufficient to sup-

port a founded report.[3] The ALJ found that Petitioner was employed as a staff member at the residential facility where Child resided and that as an employee of the residential facility he was responsible for Child's welfare. Petitioner's argument is essentially that this finding is not supported by substantial evidence because the ALJ is prohibited from looking outside the confines of the judicial adjudication when making findings of fact.

The CPS Law defines a "perpetrator" as a person who has committed child abuse and is responsible for the child's welfare. 23 Pa.C.S. § 6303. The regulations promulgated by DHS pursuant to the CPS Law define a "person responsible for the child's welfare," as a "person who provides permanent or temporary care, supervision, mental health diagnosis, training or control of a child in lieu of parental care, supervision and control." 55 Pa.Code § 3490.4(i). As an employee of the adolescent facility where Child resided, Petitioner falls within the definition of a perpetrator within the meaning of the CPS Law; however, the record from Petitioner's judicial adjudication does not identify Petitioner's place of employment.

■ For a report to be given the status of "founded", there must be a judicial adjudication and the judicial adjudication must involve "the same factual circumstances involved in the allegation of child abuse." 23 Pa.C.S. § 6303.[4] Once DHS has demonstrated that the factual circumstances of the judicial adjudication and the report are the same, the report becomes a "founded" report.

Petitioner's plea constitutes a judicial adjudication and the factual basis for that adjudication is identical to the factual basis of the CY–48 report; the words and acts are the same, the victim is Child, the address where the incidents occurred is the adolescent facility, and the time period in which the incidents occurred was when Child resided at the adolescent facility. Petitioner's employment is immaterial to the criminal charge of harassment. However, the fact of Petitioner's employment as a staff person in a residential treatment program for children is of particular significance under the CPS Law. The CPS Law defines a founded report as "a child abuse report involving a perpetrator that is made pursuant to this chapter," where accompanied by a judicial adjudication. 23 Pa.C.S. § 6303. The text of the statute references the alignment of the conduct proven in the judicial adjudication with the conduct alleged in the report, but looks internally to the definitions within the CPS Law to determine whether the individual responsi-

---

3. The CPS Law does not provide a right to appeal for perpetrators named in a founded report. However, pursuant to the Administrative Agency Law, a founded report of child sexual abuse is appealable for the "limited purpose of determining whether or not the underlying adjudication supports a founded report that the named perpetrator is responsible for the abuse." *J.G. v. Department of Public Welfare*, 795 A.2d 1089, 1093 (Pa. Cmwlth.2002). Where the issue presented is one of law, this Court's standard of review is *de novo* and our scope of review is plenary. *St. Elizabeth's Child Care Center v. Department of Public Welfare*, 600 Pa. 131, 963 A.2d 1274, 1276 (2009).

4. The CPS Law defines a "founded report" as:

A child abuse report involving a perpetrator that is made pursuant to this chapter, if any of the following applies:
(1) There has been a judicial adjudication based on a finding that a child who is a subject of the report has been abused and the adjudication involves the same factual circumstances involved in the allegation of child abuse. The judicial adjudication may include any of the following:
(i) The entry of a plea of guilty or nolo contendere.
* * *

23 Pa.C.S. § 6303.

ble for that conduct is a perpetrator. *Id.* The presence of a judicial adjudication informs the type of report that is filed and the procedure DHS must follow to maintain that report on the ChildLine Registry, rather than the confines of the proof DHS may offer to demonstrate by substantial evidence that the report should be maintained.

■ The ALJ examined the record as a whole to determine whether Petitioner was a perpetrator within the meaning of the CPS Law. The judicial adjudication factually corroborated the CY–48 report regarding who, what, where, and when but did not identify Petitioner as an employee of the adolescent facility where Child resided. The CY–48 report, admitted into evidence without objection, identified Petitioner as an employee of the adolescent facility where Child resided. (C.R. Item 7, H.T. at 10–11.) The ALJ examined the CY–48 report and the judicial adjudication and found that there was substantial evidence that Petitioner was an employee of the adolescent facility and, therefore, fit

within the definition of a perpetrator as a person responsible for Child's welfare. We conclude that the ALJ correctly determined that there was substantial evidence to find that Petitioner is a perpetrator and that the ALJ did not err by examining the record created pursuant to the CPS Law as a whole rather than limiting his findings to the confines of the record created as a part of Petitioner's plea.[5]

■ Next, Petitioner argues that the founded report should be expunged because the status of the report was not changed from "pending criminal court action" to "founded" within 60 days of his sentencing order. Petitioner argues that the text of Section 6337 of the CPS Law provides an exception to the 60–day period in which a county agency must determine the final status of a report where court action has been initiated, but only where that court action "is responsible for the delay." 23 Pa.C.S. § 6337(b). Petitioner contends that once a final order has terminated court proceedings, court action ceases to be "responsible for the delay," and

5. In support of his argument, Petitioner relies upon a line of cases, including *J.G.*, where the adjudication supporting the founded report was a dependency proceeding in which abuse was proven and multiple caregivers were found to have had the opportunity to commit the abuse, but no specific caregiver was identified as having been present at the moment of injury to the child. *J.G.*, 795 A.2d at 1094 (reversed and remanded to DHS for a determination of whether sufficient evidence exists to support a founded report that mother committed the abuse). This line of cases was abrogated by our Supreme Court in *In re L.Z.*, 111 A.3d 1164 (Pa.2015), where the Court held that the failure of a caregiver to rebut the presumption created by *prima facie* evidence that the injury to the child would not have ordinarily been sustained but for the acts or omission of the caregiver is sufficient to establish that the caregiver is the perpetrator of abuse for purposes of expunction and dependency proceedings. Even if our Supreme Court had not rejected the reasoning

which led to this Court's holding in *J.G.* and similar cases, this precedent would not support Petitioner's argument in the instant matter. The cases cited by Petitioner involve instances where multiple caregivers had responsibility for a child that was abused, multiple caregivers were then found to have had the access necessary to commit the abuse, and the dependency proceeding did not find as a fact that a single caregiver was responsible for the abuse. The issue in those cases was whether the underlying adjudication demonstrated that the petitioner in the expunction proceedings committed the alleged conduct or if the adjudication demonstrated only that the petitioner was one of multiple people that could have been responsible for the abuse. In contrast, there is no question in the instant matter that the conduct underlying Petitioner's judicial adjudication is the conduct identified as child sexual abuse in the founded report and the only individual responsible for this conduct is Petitioner.

the report must be expunged as unfounded if the appropriate county agency does not determine the report is founded within the 60 day period. *Id.* Petitioner also argues that Section 3490.34(b) of the Public Welfare Code, 55 Pa.Code § 3490.34(b), exceeds the scope of authority granted to DHS to promulgate regulations necessary to implement the CPS Law and is invalid because it fails to require a final status determination within 60 days of a judicial adjudication, providing instead an indefinite period within which a pending report may be maintained due to court action.

The Statutory Construction Act directs that the "object of all interpretation and construction of statutes is to ascertain and effectuate the intent of the General Assembly." 1 Pa.C.S. § 1921(a); *Hunt v. Pennsylvania State Police,* 603 Pa. 156, 983 A.2d 627, 631–632 (2009). When the language of a statute is unambiguous, this Court must adhere to the express language provided by the General Assembly and the letter of it is not to be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b); *Luther P. Miller, Inc. v. Underground Storage Tank Indemnification Board,* 965 A.2d 398, 404 & n. 7 (Pa.Cmwlth.2009). This Court may resort to the principles of statutory construction in order to ascertain the intent of the General Assembly only when the text of a statute is not explicit. 1 Pa.C.S. § 1921(c); *Malt Beverages Distributors Association v. Pennsylvania Liquor Control Board,* 601 Pa. 449, 974 A.2d 1144, 1149 (2009).

Section 6337 of the CPS Law directs the disposition and expunction of unfounded reports and subsection (b) governs instances where there has been an "absence of other determination," providing:

> If an investigation of a report of suspected child abuse conducted by the appropriate county agency pursuant to this chapter does not determine within 60 days of the date of the initial report of the instance of suspected child abuse that the report is a founded report, an indicated report or an unfounded report, **or unless within that same 60–day period court action has been initiated and is responsible for the delay,** the report shall be considered to be an unfounded report, and all information identifying the subjects of the report shall be expunged no later than 120 days following the expiration of one year after the date the report was received by the department. **The agency shall advise the department that court action or an arrest has been initiated so that the Statewide database is kept current regarding the status of all legal proceedings and expunction is delayed.**

23 Pa.C.S. § 6337(b) (emphasis added). Thus, following an initial report of suspected child abuse, the CPS Law requires the appropriate county agency to determine within 60 days if the report is founded, indicated, or unfounded, or the report shall be considered by DHS to be unfounded. *Id.* The statute further provides that this rule is inapplicable where "within that same 60–day period court action has been initiated and is responsible for the delay." *Id.* Instead, where court action has been initiated, the statute provides that "[t]he agency shall advise [DHS] that court action or an arrest has been initiated so that the Statewide database is kept current regarding the status of all legal proceedings and expunction is delayed." *Id.*

This Court previously addressed the timeliness of a county agency determination that a report was founded in *J.C. v. Department of Public Welfare,* 980 A.2d 743 (Pa.Cmwlth.2009). The petitioner in *J.C.* argued that the county agency failed to make a timely determination that the report was founded because the agency did not make the determination within 60 days

of the entry of the petitioner's no contest plea. *Id.* at 746. This Court examined Section 6337(b) of the CPS Law and Section 3490.67, which governs the responsibilities of the county agencies, and concluded:

Clearly, the Law contemplates a suspension of the investigation/final determination period where, as here, "court action has been initiated and is responsible for the delay." 23 Pa.C.S. § 6337(b). More importantly, the regulations contemplate a suspension of the 60–day period where, as here, there is criminal court action pending and the agency reports that status to ChildLine. 55 Pa.Code § 3490.67. In the absence of a challenge to the validity of [Section 3490.67], the regulation controls and commands the rejection of [petitioner's] argument.

*J.C.,* 980 A.2d at 747. In addition to concluding that the CPS Law and the regulations governing the county agencies' responsibilities contemplate a suspension of the 60–day investigative period where court action has been initiated and this status has been reported to DHS, this Court in *J.C.* disagreed with the premise of the petitioner's argument that the entry of a plea constituted a judicial adjudication. Instead, this Court held that "a judicial adjudication in a criminal case occurs when an appealable judgment of sentence is imposed. Under this interpretation, a suspension of the 60–day investigation/final determination period does not end with the entry of a plea in a criminal case; rather, the suspension may continue until a final, appealable judgment of sentence is imposed." *Id.* at 748.

Petitioner argues that this conclusion in *J.C.* supports his argument that the 60 days within which the county agency has to make a status determination following an initial report to ChildLine is paused while court action is taking place, but begins to run again once court action is no longer "responsible for the delay" because a final appealable judgment of sentence has been imposed. Although Petitioner relies heavily on *J.C.,* this Court did not hold in *J.C.* that the CPS Law requires a final status determination to be made within 60 days of a judicial adjudication. Instead, *J.C.* held that a status determination of "pending court action" satisfied the 60–day mandate and that, even if the county agency was again bound by the 60–day deadline once a judicial adjudication had taken place, the petitioner's argument would still fail because entry of a no contest plea is not a final adjudication in a criminal case.

 As the agency charged with implementing the CPS Law and performing the duties the CPS Law mandates, DHS's interpretation of the CPS Law is afforded great deference. *Caso v. Workers' Compensation Appeal Board (School District of Philadelphia),* 576 Pa. 287, 839 A.2d 219, 221 (2003); *see also* 23 Pa.C.S. § 6306 ("[DHS] shall promulgate regulations necessary to implement this chapter."). However, such deference is unnecessary in the instant matter because the text of Section 6337(b) of the CPS Law is not ambiguous. 1 Pa.C.S. § 1921(b); *see also Ario v. Ingram Micro, Inc.,* 600 Pa. 305, 965 A.2d 1194, 1201 (2009) ("When the words of a statute are clear and unambiguous, there is no need to look beyond the plain meaning of the statute"); *Packer v. Bureau of Professional and Occupational Affairs, Department of State, State Board of Nursing,* 99 A.3d 965, 968–969 (Pa.Cmwlth. 2014). As we stated in *J.C.,* the statute requires a county agency to advise DHS of reports that are pending court action within 60 days of the initial report to ChildLine so that DHS can delay expunction and maintain the reports as pending complaints. The language "within that same

60–day period court action has been initiated and is responsible for the delay," creates—in addition to unfounded, indicated or founded—a fourth category of status determinations: pending court action. The language is definitional and the phrase "responsible for the delay" cannot be cleaved from "court action has been initiated," but instead are two conditions that must be satisfied within the initial 60–day period for a report to receive a status determination of pending court action. The language of the statute does not provide that the 60–day period within which the county agency must determine the status of an initial report of suspected child abuse begins to run again once court action has resulted in a judicial adjudication.

The text of Section 6337(b) does charge the county agencies with a duty to advise DHS of the status of all legal proceedings affecting these reports. However, the statute is silent regarding the procedure DHS must follow in reaching a final determination where a report was given the initial status of pending court action. DHS interprets the absence of a specific procedure delineated by the statutory language as a gap in the statute that the General Assembly intended DHS to fill as a part of its implementation of the CPS Law. Therefore, DHS enacted regulations concerning the responsibilities of DHS and the county agencies for pending reports.

 A regulation promulgated by an administrative agency is valid if: (i) it was adopted within the ambit of an agency's authority as granted by the General Assembly; (ii) it was issued pursuant to proper procedure; and (iii) it is reasonable.[6] *Slippery Rock Area School District v. Unemployment Compensation Board of Review*, 603 Pa. 374, 983 A.2d 1231, 1239 (2009). This Court may not substitute its own judgment for that of the agency; to overturn the regulations at issue here it is not sufficient that they are considered to be " 'unwise or burdensome or inferior to another regulatory scheme;' rather, they must be so 'entirely at odds with fundamental principles as to be the expression of a whim rather than an exercise of judgment.' " *Popowsky v. Pennsylvania Public Utility Commission*, 589 Pa. 605, 910 A.2d 38, 53 (2006) (internal citations omitted). Therefore, our review of the validity of a regulation will disturb the agency's interpretation of its authority under the statute and the reasonableness of its exercise of discretion in enacting the regulation only where the regulation constitutes a manifest or flagrant abuse of discretion or is a purely arbitrary execution of the agency's duties or functions. *Slippery Rock Area School District*, 983 A.2d at 1242; *Winslow–Quattlebaum v. Maryland Insurance Group*, 561 Pa. 629, 752 A.2d 878, 881 (2000); *Presbyterian Medical Center of Oakmont v. Department of Public Welfare*, 792 A.2d 23, 27 (Pa.Cmwlth.2002).

Sections 3490.67 and 3490.69 regulate the responsibilities of the county agencies regarding the provision of written reports to ChildLine. Section 3490.69 requires that "[w]hen the CY–48 form is not filed with ChildLine within 60–calendar days of receipt of the report by ChildLine, the report shall be unfounded." 55 Pa.Code § 3490.69. However, Section 3490.67 provides:

(b) To avoid expunction of a case as required by § 3490.69 (relating to reports not received within 60–calendar days) **when a status determination cannot be made and the county agency has petitioned the juvenile court, an arrest has been made or there is criminal court action pending, the county agency shall send a copy of the**

6. Petitioner does not dispute that the regulation was issued pursuant to proper procedure.

CY–48 to ChildLine with one of the following status determinations:

(1) Pending juvenile court action.

**(2) Pending criminal court action.**

(3) Indicated, when there is substantial evidence that the child was abused.

(c) **The county agency shall submit a new CY–48 to ChildLine as required in subsection (a) when a final status determination is made under subsection (b).**

55 Pa.Code § 3490.67(b)–(c) (emphasis added). Under Section 3490.67, if a final status determination cannot be made once an arrest has occurred or there is criminal court action pending, the county agency must transmit a report to ChildLine with the status of pending. *Id.* The regulation does not require the county agency to submit a second report within a specific period of time after a final adjudication has occurred; instead, the regulation requires that the county agency must submit a new report to ChildLine only once a final status determination of unfounded, indicated, or founded has been made by the county agency. *Id.*

DHS's responsibilities for pending reports are regulated by Section 3490.34. Subsection (a) of Section 3490.34 provides for the creation of a pending complaint file when ChildLine receives a report of suspected child abuse. 55 Pa.Code § 3490.34(a). Subsection (c) of Section 3490.34 provides that "[i]f within 60–calendar days from the date of the initial report of suspected child abuse a status determination has not been received at ChildLine, the report shall be considered unfounded." 55 Pa.Code § 3490.34(c). However, like subsection (b) of Section 3490.67 detailing the responsibilities of the county agencies, subsection (b) of Section 3490.34 provides that the 60–day time limit does not apply

where court action has been initiated. Section 3490.34(b) specifically states:

> Notwithstanding subsection (c), reports which are determined pending juvenile or criminal court action shall be maintained in the pending complaint file until the county agency notifies ChildLine of the final status.

55 Pa.Code § 3490.34(b). Subsection (b) of Section 3490.34 thus reflects the county agencies' mandatory duty to notify DHS of the status of court action affecting a report maintained in the pending complaint file. The regulation does not establish a time period within which the county agency must act when notifying DHS that court action has resulted in a final status determination; the regulation simply provides that DHS's action on the pending complaint is precipitated by notice from the applicable county agency that a final determination of the status of the pending complaint has been made.

The statute is silent regarding the procedure DHS must follow after a final judicial adjudication. By providing specific direction within the statutory text for resolution of initial status determinations, while at the same time declining to enact a specific procedure for DHS to follow after the final judicial adjudication of an individual named in a pending report has taken place, the General Assembly conferred on DHS the authority to establish a procedure, as a part of its implementation of the CPS Law, for reaching a final determination on pending reports once court action has resulted in a final judicial adjudication. *Bayada Nurses, Inc. v. Department of Labor and Industry,* 607 Pa. 527, 8 A.3d 866, 882–883 (2010); *St. Elizabeth's Child Care Center v. Department of Public Welfare,* 600 Pa. 131, 963 A.2d 1274, 1278 (2009); *Tri–County Industries, Inc. v. Commonwealth,* 818 A.2d 574, 580–581 (Pa.Cmwlth.2003). Subsection (b) of Sec-

tion 3490.34 does not do that which Section 6337(b) of the CPS Law has not provided; in order to implement the CPS Law, a procedure for issuing a determination on the final status of a report following a judicial adjudication was necessary, and in accordance with its authority to promulgate regulations necessary to implement the CPS Law, DHS promulgated Section 3490.34. 23 Pa.C.S. § 6306; 55 Pa Code § 3490.34.

The regulations promulgated by DHS do not conflict with the text of Section 6337 of the CPS Law. *Department of Public Welfare v. Forbes Health System*, 492 Pa. 77, 422 A.2d 480, 485 (1980); *Heaton v. Department of Public Welfare*, 96 Pa.Cmwlth. 195, 506 A.2d 1350, 1355 (1986). The regulations DHS promulgated adhere to the distinction the text of Section 6337 of the CPS Law makes between reports where there has been court action and reports where there has not been court action. *Pelton v. Department of Public Welfare*, 514 Pa. 323, 523 A.2d 1104, 1107–1108 (1987); *Verizon Pennsylvania, Inc. v. Workers' Compensation Appeal Board (Ketterer)*, 87 A.3d 942, 947–948 (Pa. Cmwlth.2014). The regulations rely upon the mandate within the statute that county agencies advise the statewide database on the current status of legal proceedings. *Popowsky*, 910 A.2d at 54; *Peek v. Department of Aging*, 873 A.2d 43, 47 (Pa. Cmwlth.2005). Under DHS's interpretation of the statute and its implementing regulations, whether or not a judicial adjudication results in a final determination of unfounded, indicated or founded turns on the conduct underlying the judicial adjudication and not on the applicable county agency's timely receipt of notice of a judicial adjudication and transmission of its final determination to DHS. *Tire Jockey Service, Inc. v. Department of Environmental Protection*, 591 Pa. 73, 915 A.2d 1165, 1186–1191 (2007); *Rohrbaugh v.*

*Pennsylvania Public Utility Commission*, 556 Pa. 199, 727 A.2d 1080, 1086 (1999).

We agree that it is the substance of the allegations, rather than a lapse of calendar days that the statute intended to determine the final outcome of a report following a judicial adjudication. We also find persuasive DHS's argument that the rights of an individual named as a perpetrator in a pending report are adequately protected by the ability of the individual to challenge the final determination on the basis that delay by the county agency or DHS prejudiced the individual's ability to defend against the allegations and that, in the case of a founded report, the final determination is not adequately supported by a judicial adjudication. Therefore, we conclude that DHS did not abuse its discretion, flagrantly or otherwise, or act arbitrarily in the execution of its duties and functions under the CPS Law when it promulgated Section 3490.34(b).

■ Moreover, beyond according with the text of the CPS Law, the regulations enacted by DHS regarding its and the county agencies' responsibilities for reports with a status determination of pending court action furthers the General Assembly's intent in enacting the CPS Law. In enacting the CPS Law, the General Assembly recognized that "[a]bused children are in urgent need of an effective child protective service to prevent them from suffering further injury and impairment." 23 Pa.C.S. § 6302. In response to this need, the General Assembly stated that the purpose of the CPS Law is, *inter alia:* to encourage more complete reporting of suspected child abuse; to involve law enforcement agencies in responding to child abuse; to establish county agencies with the purpose of investigating reports of child abuse "swiftly and competently"; and to provide protection for children from

further abuse. *Id.* In an examination of the interests furthered by the CPS Law, our Supreme Court has concluded that the "government's interest in addressing the urgent need of abused children for protection from further injury and impairment encompasses both the child or children who were actually abused by the perpetrator, as well as any children who may potentially be abused by the perpetrator." *G.V. v. Department of Public Welfare,* 625 Pa. 280, 91 A.3d 667, 673–674 (2014).

The purpose and intent of the CPS Law clearly demonstrate that the need for urgency is focused on the child identified in a report of suspected abuse. As a result of this urgency, the General Assembly created the 60–day time period within which the county agency must act to make a swift determination of the risks the child faces and the services the child may need. Once this status determination has been made, the need for urgency dissipates. Had DHS fashioned a regulation that reapplied the 60–day deadline once a judicial adjudication had taken place, we agree with Petitioner that individuals named in a pending report would likely receive the same swift resolution following a judicial adjudication that children receive following an initial report to ChildLine. However, by doing so, DHS would have created a procedural hurdle not found in the statute with the likely consequence that individuals who have been sentenced for acts amounting to child abuse in a court of law would potentially be absent from the ChildLine registry. Such underreporting runs directly counter to the General Assembly's stated purpose of encouraging more complete reporting of suspected child abuse.

 Section 3490.34(b) also furthers the General Assembly's intent to encourage law enforcement, DHS, and county agencies to cooperate. The regulation anticipates the difficulties inherent in independent agencies—civil and criminal, county and state—coordinating the investigation and resolution of allegations of child abuse and recognizes that DHS cannot go beyond the limits of the CPS Law to dictate strict requirements to law enforcement or the courts concerning information sharing with county agencies. The regulation furthers the purpose of the CPS Law to involve law enforcement agencies in the response to child abuse by allowing the county agencies to permit outside investigation and prosecution to take precedence without prejudice to the county agencies' ultimate responsibility under the CPS Law.

 Accordingly, we hold that DHS did not err in interpreting Section 6337 of the CPS Law and that subsection (b) of Section 3490.34 is a valid regulation; where court action has been initiated and DHS has received a report from the applicable county agency for maintenance on ChildLine with the status pending court action, the 60 days within which a county agency has to determine if a report is founded, indicated, or unfounded is satisfied, and the report shall remain with the status pending criminal court action until the county agency has informed DHS that a final determination has been made. This holding is consistent with the plain text of the CPS Law, the regulations promulgated by DHS to implement the CPS Law, and the General Assembly's intent in enacting the CPS Law.

The order of the Secretary of DHS is affirmed.

### ORDER

AND NOW, this 27th day of July, 2015, the final Order of the Secretary of the

Department of Human Services[7] in the above-captioned matter is AFFIRMED.

---

7. Subsequent to the filing of petition for review, the Department of Public Welfare (DPW) became the Department of Human Services (DHS). *See* Act of September 24, 2014, P.L. 2458, 62 P.S. § 103 (effective November 24, 2014).